**Alton J. MEYER, Meyer Acquisition Corp., and Ford Motor Company, Petitioners,**

v.

**WMCO–GP, LLC and Bullock Motor Company, Respondents.**

No. 04–0252.

Supreme Court of Texas.

Argued March 23, 2005.

Decided Dec. 22, 2006.

Robert S. Morris, Virginia Nelson Hammerle, Hammerle Finley PC, Denton, Preston W. McGee, Flower Davis PLLC, Tyler, Billy Martin Donley, Pengcheng Glen Shu, James Keith Russell, Baker & Hostetler LLP, Houston, for Petitioner.

Clayton E. Dark Jr., Lufkin, Darrin M. Walker, Law Office of Darrin Walker, Kingwood, Joe Scott Evans, Evans and Kitchens, L.L.P., Groveton, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

A person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others.[1] This is such a case. A motor vehicle manufacturer exercised its right of first refusal to acquire its dealer's business and transferred the right to its assignee, preempting the dealer's agreement to sell the business to another. The jilted buyer sued the manufacturer and its assignee for interfering with the proposed contract of sale. Although the defendants had no contract with the jilted buyer, they demanded arbitration based on the buyer's agreement to arbitrate disputes with the dealer. The trial court refused to compel arbitration, and a divided court of appeals affirmed.[2] We reverse.

Ford Motor Co.'s agreement with its dealer, Bullock Motor Co., gave Ford an assignable right of first refusal to acquire Bullock's business should Bullock want to sell to another. The dealership agreement provided that Ford could "discuss the terms of [any proposed sale] with any potential Assignee, as long as such information is treated confidentially." Bullock contracted to sell the dealership to WMCO–GP, LLC. Their purchase and sale agreement ("PSA") acknowledged Ford's right of first refusal and, if Ford exercised that right, allowed Bullock to terminate the agreement. Ford exercised its right and assigned it to Alton J. Meyer and Meyer Acquisition Corp. (collectively "Meyer"), and Bullock accordingly sold its business to Meyer.

WMCO sued Bullock, Meyer, and Ford. WMCO sought a declaration that Ford's right of first refusal was void because, in violation of the dealership agreement, assignee Meyer had disclosed WMCO's confidential information to third parties. WMCO also claimed damages against Meyer for tortious interference with the PSA and against Meyer and Ford for conspiring to violate the Texas Motor Vehicle Commission Code.[3] WMCO asserted that although Bullock had breached the PSA, it was joined only as a necessary party because it would have performed the PSA but for Ford's exercise of its right of first refusal.

Meyer and Ford moved to compel arbitration based on WMCO's agreement to the following provision in the PSA, to which they, of course, were not parties themselves:

§ 2301.458, which makes it unlawful for a motor vehicle manufacturer to fail to give effect to or attempt to prevent the sale or transfer of a dealer, dealership or franchise except in certain circumstances, and art. 4413(36), § 5.02(b)(3), (5), now codified as TEX. OCC.CODE § 2301.453, .455, which makes it unlawful, notwithstanding the terms of any franchise agreement, for a manufacturer to terminate a franchise unless certain statutory requirements are met.

---

1.  *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex.2006) (per curiam) (holding that a party to an arbitration agreement must arbitrate tortious interference claims against the other party's agents and affiliates).

2.  126 S.W.3d 313, 320 (Tex.App.-Beaumont 2004).

3.  Specifically, WMCO alleged that Meyer and Ford had conspired to violate what was then TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(8), now codified as TEX. OCC.CODE

Any controversy between the parties to this Agreement involving the construction or application of any of the terms, covenants, or conditions of this Agreement, shall ... be submitted to binding arbitration, and such arbitration shall comply with and be governed by the provisions of the Texas General Arbitration Act. ...

Meyer and Ford argued that because WMCO had made this agreement with Bullock, WMCO was equitably estopped from refusing to arbitrate with them. Bullock did not join in the motions. Although the dealership agreement between Bullock and Ford also provided for arbitration and was raised in the trial court, Meyer and Ford conceded, for purposes of this appeal, that the dealership agreement would not apply to WMCO.[4] Nor do they rely on the Federal Arbitration Act;[5] they assert only the Texas General Arbitration Act.[6]

The trial court denied the motion, and a divided court of appeals affirmed.[7] We granted Meyer's and Ford's petitions for review.[8]

■ As a rule, arbitration of a claim cannot be compelled unless it falls within the scope of a valid arbitration agreement.[9] But sometimes a person who is not a party to the agreement can compel arbitration with one who is,[10] and vice versa.[11] We have held that a person who seeks by his claim "to derive a direct benefit from the contract containing the arbitration provision" may be equitably estopped from refusing arbitration.[12] The court of appeals came to this same conclusion based largely on *Grigson v. Creative Artists Agency, L.L. C.,* in which the United States Court of Appeals for the Fifth Circuit quoted the Eleventh Circuit's decision in *MS Dealer Service Corp. v. Franklin,* stating:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different cir-

**4.** 126 S.W.3d at 319.

**5.** *See* 9 U.S.C. §§ 1–16.

**6.** *See* Tex. Civ. Prac. & Rem.Code §§ 171.001–.098.

**7.** 126 S.W.3d at 315, 320 (McKeithen, C.J.; Gaultney, J., dissenting); *see* Tex. Civ. Prac. & Rem.Code § 171.098(a)(1) ("A party may appeal a judgment or decree entered under this chapter or an order ... denying an application to compel arbitration. ...").

**8.** 48 Tex. Sup.Ct. J. 384 (Feb 11, 2005). Because there was a dissent in the court of appeals, we have jurisdiction over this interlocutory appeal. *See* Tex. Gov't Code § 22.225(b)(3) (disallowing a petition for review in an interlocutory appeal), and (c) (except when, e.g., there was an appealable trial court judgment and "the justices of the courts of appeals disagree[d] on a question of law material to the decision").

**9.** Tex. Civ. Prac. & Rem.Code § 171.021(a)(1) ("A court shall order the parties to arbitrate on application of a party showing ... an

agreement to arbitrate. ..."); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003) ("A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement.") (citing *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999) (per curiam) (stating the same rule under the Federal Arbitration Act)).

**10.** *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 761–762 (Tex.2006) (per curiam).

**11.** *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 131–135 (Tex.2005); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 738 (Tex.2005); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 755–756 (Tex.2001).

**12.** *In re Vesta Ins. Group,* 192 S.W.3d at 761–762; *In re Kellogg Brown & Root,* 166 S.W.3d at 741; *see In re Weekley Homes,* 180 S.W.3d at 131; *In re FirstMerit,* 52 S.W.3d at 755–756.

cumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.[13]

*Grigson*, like the present case, was a suit by a signatory to an arbitration agreement against a nonsignatory.[14] In essence, the Fifth Circuit explained, the claimant cannot

> "have it both ways": it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.[15]

Having derived from *Grigson* a substantially correct statement of Texas law, the court of appeals misapplied it to this case. First, the court concluded that WMCO could not be required to arbitrate claims other than those described in the arbitration provision of the PSA—"controvers[ies] between the parties to this Agreement involving the construction or application of any of the terms, covenants, or conditions of this Agreement".[16] WMCO's claims were against non-parties Meyer and Ford and did not, the court determined, involve the construction or application of the PSA.[17] Had the PSA broadly required arbitration of "all disputes" in just so many words instead of describing particular claims and parties, the court reasoned, equitable estoppel would apply.[18]

We agree that an arbitration provision may limit the application of equitable estoppel. For example, if Bullock and WMCO, the parties to the PSA, had agreed to arbitrate only very specific disputes that might arise between the two of them—whether specific vehicles were included in inventory, for example—and nothing else, one could hardly argue that WMCO would be equitably estopped from drawing the same line for disputes with non-parties. Equitable estoppel cannot give non-parties a greater right to arbitration than the parties themselves have. But the text of the arbitration provision here is not so restrictive. The phrase "between the parties," without more, suggests only that Bullock and WMCO meant to ensure that the agreement applied to disputes between them, not that they in-

---

**13.** 210 F.3d 524, 527 (5th Cir.), *cert. denied,* 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000) (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11 th Cir.1999) (internal citations and quotation marks omitted)) (added emphasis omitted), discussed at 126 S.W.3d at 316–318.

**14.** 210 F.3d at 526.

**15.** *Id.* at 528 (citing *MS Dealer,* 177 F.3d at 947).

**16.** 126 S.W.3d at 319.

**17.** *Id.* at 319–320.

**18.** *See id.* at 319.

tended to preclude the application of equitable estoppel. A similar provision in *MS Dealer*, expressly naming the car seller and buyer, did not prevent that court from applying equitable estoppel to compel arbitration of tort claims against a non-signatory service corporation.[19] And while "all disputes" might be broader than disputes "involving the construction or application of any of the terms, covenants, or conditions" of the PSA, the latter category easily includes WMCO's claims, which all construe or apply the condition of the PSA that Bullock could terminate if Ford exercised its right of first refusal. The arbitration provision does not exclude WMCO's claims.

■ The court of appeals gave a second reason for not applying equitable estoppel: WMCO's claims against Meyer and Ford did not rely on the terms of the PSA but merely "touch[ed] upon" or "related to" it.[20] But this does not defeat the application of equitable estoppel. WMCO's claim against Bullock for breach of the PSA relies squarely on the PSA. WMCO's other claims against Meyer and Ford also all depend on the existence of the PSA. If Bullock properly terminated the PSA, based on Ford's exercise of its right of first refusal, then there would be no claim for tortious interference, no need to decide whether Ford validly exercised the right of first refusal, and no need to decide whether Meyer and Ford conspired to violate statutes protecting dealers from certain actions by manufacturers. WMCO con-

cedes that if the PSA was preempted by Ford's exercise of its right of first refusal, then WMCO has no rights against Meyer and Ford for the court to declare, there was no contract to interfere with, and Meyer and Ford could not have violated state law. WMCO further concedes that its damages cannot be calculated without reference to the PSA. When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims.[21]

■ Finally, the court concluded that WMCO's claims against Meyer and Ford were not intertwined with claims against Bullock.[22] This is simply wrong. WMCO's claims against Meyer and Ford are not only intertwined with its claims against Bullock, they have the same tap root: WMCO's assertion that Ford lost its right of first refusal. If WMCO is correct in this assertion it is clearly entitled to the declaration it seeks. Moreover, only if WMCO is correct could Bullock have improperly terminated the PSA and breached it; and thus only if WMCO is correct could the PSA still remain in effect, despite Bullock's termination of it, such that Meyer could have tortiously interfered with it or WMCO have any basis for its state law claims. WMCO stresses that it has made Bullock a nominal party only and that Bullock is willing to sell to whoever is entitled to buy. But the interdependence of WMCO's claims against Bullock, Meyer, and Ford is not removed by Bullock's com-

19. *MS Dealer*, 177 F.3d at 944 ("[The] arbitration clause[] provid[es] that 'buyer hereby acknowledges and agrees that all disputes and controversies of every kind and nature *between buyer and Jim Burke Motors, Inc.* arising out of or in connection with the purchase of this vehicle will be resolved by arbitration ....' ") (emphasis added).

20. 126 S.W.3d at 319.

21. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex.2006) (per curiam) (holding that tortious interference claims by one signatory to an arbitration agreement against agents or affiliates of the other signatory arise more from the contract than general law and are thus subject to arbitration).

22. 126 S.W.3d at 320.

placency. WMCO is trying to have it both ways: it is asserting rights that it would not have but for the PSA, but refusing to honor its agreement to arbitrate disputes over those rights.[23]

■ WMCO also argues that the trial court had discretion not to apply equitable estoppel, even if it could be applied in the same circumstances. We disagree. "A trial court has no 'discretion' in determining what the law is or applying the law to the facts."[24]

The trial court should have granted Meyer's and Ford's motions to compel arbitration. Accordingly, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Justice O'NEILL filed a dissenting opinion.

Justice O'NEILL, dissenting.

Clearly, a nonsignatory can compel a party who has signed an arbitration agreement to arbitrate a dispute under appropriate circumstances. *E.g., Grigson v. Creative Artists Agency,* 210 F.3d 524, 528 (5th Cir.2000); *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999). A party who has signed an agreement containing an arbitration clause may be compelled to arbitrate disputes with a nonsignatory when the signatory must rely on the terms of the agreement to prosecute claims against the nonsignatory. *Grigson,* 210 F.3d at 527 (citing *MS Dealers Serv. Corp.,* 177 F.3d at 947). A nonsignatory may also be entitled to compel arbitration when claims asserted by a signatory allege "substantially interdepen-

dent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (quoting *MS Dealers Serv. Corp.,* 177 F.3d at 947). But even the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so. *E.E.O. C. v. Waffle House, Inc.,* 534 U.S. 279, 293–94, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002).

I agree with the court of appeals that neither prong of the *Grigson* test is satisfied in this case. While WMCO asserts that Ford and Meyer tortiously interfered with the purchase and sales agreement between WMCO and Bullock, its claims depend on the existence of the agreement, not its terms. In similar circumstances, the Fifth Circuit has declined to compel arbitration, noting that the mere fact that a dispute touches on an agreement containing an arbitration clause is an insufficient basis on which to compel arbitration. *Hill v. G.E. Power Sys., Inc.,* 282 F.3d 343, 348–49 (5th Cir.2002). Neither is the second prong fulfilled. WMCO does not allege any substantially interrelated misconduct between Bullock and Ford or Meyer. To the contrary, WMCO asserts that Bullock was compelled by Ford and Meyer to breach the purchase and sales agreement and would have fully performed absent their interference.

Finally, I also agree with the court of appeals that the terms of the arbitration clause in the purchase and sales agreement between Bullock and WMCO express an intent to require arbitration of a relatively narrow scope of disputes—disputes "between the parties to [the] Agreement involving the construction or application of

---

**23.** *Cf. Grigson,* 210 F.3d at 527–528 (stating that equitable estoppel is "much more readily applicable" when claims both directly rely on the agreement containing the arbitration pro-

vision and are also intertwined with claims against a party to the agreement).

**24.** *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

any of the terms, covenants, or conditions of [the] Agreement...." 126 S.W.3d 313, 319. This language is considerably narrower than the standard, broad arbitration clause requiring arbitration of " '[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof ....' " *Beckham v. William Bayley Co.,* 655 F.Supp. 288, 291 (N.D.Tex.1987) (quoting Hoellering, *Arbitrability of Disputes,* 41 BUS. LAW. 125 (Nov.1985) (citing K. *Seide, A Dictionary of Arbitration and Its Terms* 21 (1970))). The strong policy favoring arbitration "cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Id.* at 291–92.

Under these circumstances, the trial court did not abuse its discretion in refusing to compel arbitration. I respectfully dissent.