IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0865
════════════
 
In re Merrill Lynch Trust 
Company FSB, Merrill Lynch Life Insurance Company, and Henry Medina, Relators
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued March 23, 
2005
 
 
            Justice Hecht, joined by Justice Medina, and joined by Justice O’Neill as to Part I, concurring 
in part and dissenting in part.
 
            
By agreeing to arbitrate all controversies with their broker, Merrill Lynch, 
Pierce, Fenner & Smith, Inc. (“Merrill Lynch”), 
Juan and Norma Alaniz also agreed to arbitrate claims 
against Merrill Lynch employees, including Henry Medina, for which Merrill Lynch 
could be liable because of the employment relationship. But Merrill Lynch cannot 
be held vicariously liable for Medina’s actions, as it might ordinarily be, 
because the Alanizes have affirmatively disclaimed 
such liability. And the record does not establish whether Merrill Lynch would be 
obliged to indemnify Medina for any liability he might have to the 
Alanizes. Even if his actions as a financial analyst 
were generally within the course and scope of employment, it is not clear 
whether the same can be said for his recommendation of a transaction illegal 
under Texas 
law. The record provides no other basis for holding Merrill Lynch liable for 
Medina’s actions 
or for the actions of its affiliates, Merrill Lynch Trust Co., FSB (“ML Trust”) 
and Merrill Lynch Life Insurance Co. (“ML Life”), or for estopping the Alanizes from 
refusing to arbitrate their claims against those two companies. Accordingly, I 
would hold that the lower courts correctly refused to compel arbitration of any 
of the Alanizes’ claims.[1]
            
I agree that if some of the Alanizes’ claims must be 
arbitrated and some litigated, litigation must be stayed pending the outcome of 
the arbitration. Thus, I concur only in Parts I, III-A, and IV of the Court’s 
opinion.
I
            
For estate planning purposes, the Alanizes created an 
irrevocable trust, designating their descendants as beneficiaries and ML Trust 
as trustee, to purchase and hold a $5 million insurance policy on their lives. 
ML Trust bought the policy from ML Life with funds from the Alanizes’ Merrill Lynch accounts. Nine years later, the 
Alanizes sued ML Trust and ML Life for self-dealing. 
The two companies concede that because they are affiliated,[2] the purchase of the policy was illegal 
under Texas 
law,[3] although they contend that they did not 
recognize the illegality at the time and that, in any event, the Alanizes benefitted from the 
transaction.
            
The Alanizes never agreed to arbitrate disputes with 
ML Trust and ML Life, but they did agree to arbitrate “all controversies” that 
might arise with Merrill Lynch.[4] Their financial advisor, Medina, a Merrill Lynch 
employee, recommended the creation of the trust and the purchase of the ML Life 
policy. As a licensed insurance agent, Medina sold the policy to the trust and 
received compensation in addition to his Merrill Lynch salary.
           
The Alanizes could not evade their arbitration 
agreement with Merrill Lynch simply by suing its employee, Medina, who was not a 
party to the agreement. An agreement to arbitrate disputes with someone 
necessarily includes claims against his agents if he can be held liable for 
those claims because of the agency relationship. The Court explained one reason 
for this rule last Term in In re Vesta Insurance Group, Inc..[5] A person cannot avoid his obligations 
merely because they must be discharged by an agent. For example, a company that 
has contracted to sell six widgets cannot renege on that contract because its 
shipping clerk, who would actually see that those widgets are sent to the buyer, 
did not also sign the contract. To allow a person to avoid an agreement to 
arbitrate disputes with someone by suing only the agents whose actions gave rise 
to the dispute but who did not sign the agreement would be to give arbitration 
agreements less effect than other agreements.[6]
            
Another reason for the rule is that a party should not be permitted to 
eviscerate his agreement to arbitrate disputes with a principal by establishing 
liability against the agent. As the Court explains, a principal’s liability for 
his agent’s action taken in the furtherance of the principal’s business does not 
preclude action against the agent individually.[7] But establishing the agent’s liability 
may be tantamount to establishing liability against the principal if the agent 
acted in the course and scope of his authority and the principal provided his 
defense. Further even if the claimant did not attempt to use a judgment against 
the agent to recover against the principal, the agent himself might be entitled 
to have the principal indemnify him for his liability.[8] In either situation, a party could 
effectively resolve the dispute that he had agreed to arbitrate with the 
principal by litigating with the agent.
            
So the Alanizes are bound to arbitrate with Medina any claims they have 
against Merrill Lynch. For example, they could allege that Medina was negligent or 
misleading in giving them financial advice. These claims would be arbitrable even if asserted against Medina only because they 
involve his conduct as a Merrill Lynch employee. But the Alanizes have tried very hard not to assert any such claims. 
Their original petition begins by complaining of Medina “in his capacity as an agent of Merrill 
Lynch Trust Company and Merrill Lynch Life Insurance Company”, not as a Merrill 
Lynch employee. The petition alleges that ML Trust “as trustee used the trust 
funds to illegally engage in self-dealing by purchasing a life insurance policy 
from its own affiliate [ML Life] through its agent Henry Medina.” Parts of the 
petition can be read in isolation to assert claims against Medina beyond his actions 
on behalf of ML Life and ML Trust. For example, the petition alleges generally 
that “Defendants”, Medina included, breached their fiduciary 
duties, were negligent, and made negligent misrepresentations. But the Alanizes tell this Court that their “chief complaint” 
against Medina 
is “in his capacity as a licensed insurance agent for Life Insurance Company and 
sale of the insurance policy at issue.”[9] Their “chief allegation”, they say, is 
that ML Trust and ML Life engaged in self-dealing.[10] They contend that “Medina’s actions as a licensed insurance agent in the sale 
of a life insurance policy in Texas are irrelevant and unconnected to 
[Merrill Lynch and the CMA agreements].”[11] Merrill Lynch, they say, “is not a 
defendant in the lawsuit simply because it neither acted as 
trustee nor insurance salesman and thus cannot be legally responsible for 
the damages caused to [plaintiffs] for violations of the Texas Trust Code or 
Insurance Code.”[12] Merrill Lynch, they continue, “has no 
potential liability for any of the claims in this case and [plaintiffs have] not 
alleged [that Merrill Lynch ] engaged in any act or 
omission in connection with the trust or insurance policy” that is the basis of 
the suit.[13] The Alanizes’ 
counsel told the trial court that if they sued Merrill Lynch on the claims they 
had asserted against ML Trust, ML Life, and Medina, it would be entitled to summary 
judgment. The reason the parent company “set up these three affiliated companies 
and made them distinct entities”, he argued, is “[b]ecause they do distinctly different things”. “[T]here’s no 
evidence,” he stated, “that my clients are attempting to hold [Merrill Lynch] 
liable for the acts of the trust company, the life insurance company, or 
Medina.”
            
Whether one can serve two masters,[14] the law allows it and generally makes 
both employers liable for the agent’s actions.[15] But nothing requires a third party 
injured by the agent to hold both employers responsible. Ordinarily, the 
claimant has every reason to do so, if not simply to assure full recovery, then 
to keep each employer from escaping liability by blaming the other. But the 
Alanizes face another consideration. ML Trust and ML 
Life have conceded that they violated Texas law in the purchase and sale of the life 
insurance policy. Merrill Lynch, on the other hand, does not admit that it is 
liable to the Alanizes for that reason or any other. 
The Alanizes must still prove that ML Trust’s and ML 
Life’s actions caused damages, which defendants adamantly deny, but the Alanizes may consider that an easier burden than taking on 
Merrill Lynch. Regardless of their motivation, nothing prevents them from 
complaining of Medina’s actions on behalf of ML Trust and ML 
Life while disclaiming any complaint about his action on behalf of Merrill 
Lynch. That is what the Alanizes have done. It is not 
merely artful pleading, as relators complain. The 
Alanizes have disclaimed liability by Merrill 
Lynch.
            
Because allegations in the Alanizes’ petition can be 
read to assert claims other than self-dealing by ML Trust and ML Life, and the 
Alanizes have not stipulated under oath or in their 
pleadings that they assert no other claims, the Court concludes that the Alanizes’ claims against Medina “are in substance claims against Merrill 
Lynch”.[16] But I would not ignore the efforts to 
limit their complaints that the Alanizes have 
made. The Court views their disclaimer as ineffective because it is not 
iron-clad, and worries that the Alanizes could still 
pursue imposing liability on Merrill Lynch down the road. But any claim they 
make against Merrill Lynch must be arbitrated. Should the Alanizes prevail in this action, their recovery would not 
bind Merrill Lynch because it is not a party.
            
The Alanizes’ arbitration agreement might nevertheless 
be circumvented if Merrill Lynch were obligated to indemnify Medina, because he is an 
employee, or ML Trust and ML Life, because they are affiliates, and a judgment 
against them were binding on Merrill Lynch. But nothing in the record suggests 
that Merrill Lynch has any obligation to indemnify its affiliates, and it is 
unclear whether it would be required to indemnify Medina, or whether his 
recommendation of an illegal transaction, despite his claimed innocence, is the 
sort of conduct for which he is not due indemnification.[17] Also, while the Court states that 
“[t]here is no question Medina was acting in the 
course and scope of his employment”,[18] the only evidence comes from Medina and the Alanizes, who have every reason to think he was. Merrill 
Lynch has not been heard on the subject. For all we know, Merrill Lynch had a 
policy against recommending transactions like this one. The right to arbitration 
must be proved, not merely assumed.
            
It bears repeating that a party cannot avoid his agreement to arbitrate by suing 
the other party’s employees instead of the employee himself. But that is not the 
case here. If Medina had acted only as a financial analyst 
employed by Merrill Lynch and not as a licensed agent selling insurance, the 
Alanizes would have no basis for a claim against him 
distinct from a claim against Merrill Lynch. But he played a separate role, for 
which he was separately compensated, and I would hold that the Alanizes, disavowing all claims against Merrill Lynch, can 
sue him separately in that role, as well as ML Trust and ML Life.
II
            
Estoppel sometimes requires a person to arbitrate even 
though he has not agreed to do so, as this Court observed just six months ago in 
Meyer v. WMCO-GP, LLC.[19] When, exactly, has been hard to define. 
Several years ago, the Eleventh Circuit stated:
 
application of equitable estoppel is warranted 
when the signatory to the contract containing thearbitration clause raises allegations of substantially 
interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the 
contract. Otherwise the arbitration proceedings between the two signatories 
would be rendered meaningless and the federal policy in favor of arbitration 
effectively thwarted.[20]
 
The Fifth 
Circuit endorsed this view in Grigson v. 
Creative Artists Agency, L.L.C.,[21] and we referred to it as “substantially 
correct” in Meyer.[22]
            
The Court criticizes estoppel based on “substantially 
interdependent and concerted misconduct” because the theory “is far from 
well-settled in the federal courts.”[23] The Court seems to think that the 
federal courts may be right in finding estoppel when 
arbitrable and nonarbitrable 
claims are “intertwined” as long as there is a “close relationship” component,[24] but the Court asserts that Grigson does not have that component. It is 
not at all clear to me that Grigson’s second 
prong is much different from the rule for intertwined claims applied in other 
cases that the Court accepts, but the issue need not be decided here. The Alanizes’ claims against ML Trust and ML Life, as I have 
described them above, focus solely on the illegality of the inter-affiliate 
purchase and sale of the life policy. These claims are not intertwined with any 
claims that the Alanizes’ might have against Merrill 
Lynch (which they have disavowed); they are not “substantially interdependent,” 
do not have a “close relationship”, and do not allege “concerted misconduct”. No 
estoppel theory prohibits the Alanizes from refusing to arbitrate the claims it has 
asserted in the circumstances of this case.
* * *
            
The Alanizes are not required to arbitrate their 
claims. I would accordingly deny mandamus relief.
 
____________________________                                                    

Nathan L. 
Hecht
Justice
 
Opinion delivered: August 24, 
2007









[1] 
159 S.W.3d 162 (Tex. App.—Corpus Christi 2004).

[2] 
Merrill Lynch & Co., The Merrill 
Lynch 2004 Factbook 12 – 13 (2005), http://www.ml.com/media/47195.pdf 
(last visited Aug. 22, 2007) (available in Clerk of Court’s case file) 
(excerpting information from public filings and stating that Merrill Lynch Life 
Insurance Co. is a subsidiary of Merrill Lynch Insurance Group, Inc., which, 
along with Merrill Lynch Trust Co., FSB, are subsidiaries of Merrill Lynch 
Group, Inc., which, along with Merrill Lynch, Pierce, Fenner & Smith Inc., are subsidiaries of Merrill Lynch 
& Co., Inc.).

[3] 
Tex. Prop. Code § 113.053(a)(1) (stating that with certain exceptions, “a trustee shall 
not directly or indirectly buy or sell trust property from or to . . . the 
trustee or an affiliate”); id. § 111.004(1)(A) (defining “affiliate” for 
purposes of the Texas Trust Code as “a person who directly or indirectly, 
through one or more intermediaries, controls, is controlled by, or is under 
common control with another person”).

[4] 
The Alanizes’ Cash Management Account Agreements with 
Merrill Lynch provided: “I agree that all controversies which may arise between 
us, including but not limited to those involving any transaction or the 
construction, performance, or breach of this or any other agreement between us, 
whether entered into prior, on or subsequent to the date hereof, shall be 
determined by arbitration.” The agreements further specified that “‘I,’ ‘me,’ 
‘my’ or ‘accountholder’ means each person who signs the CMA Application and 
Agreement form or the CMA SubAccount Application and 
Agreement form. ‘You,’ ‘your’ or ‘MLPF&S’ means Merrill Lynch, Pierce, Fenner & Smith Incorporated. . . .”

[5] 
192 S.W.3d 759 (Tex. 2006) (per curiam).

[6] 
Id. at 762 (“When contracting parties agree to arbitrate all disputes 
‘under or with respect to’ a contract (as they did here), they generally intend 
to include disputes about their agents’ actions because ‘[a]s a general rule, 
the actions of a corporate agent on behalf of the corporation are deemed the 
corporation's acts.’ If arbitration clauses only apply to contractual 
signatories, then this intent can only be accomplished by having every officer 
and agent (and every affiliate and its officers and agents) either sign the 
contract or be listed as a third-party beneficiary. This would not place such 
clauses on an equal footing with all other parts of a corporate contract.” 
(citations omitted)).

[7] 
Ante at ___ n.7 (citing authorities).

[8] 
See Oats v. Dublin Nat’l Bank, 90 S.W.2d 824, 829 (Tex. 1936) 
(stating that “an agent, who in the performance of his duties for his principal 
incurs liability for an act not morally wrong, may have indemnity from the 
principal”); Aviation Office of Am., Inc. v. Alexander & Alexander of 
Tex., Inc., 751 S.W.2d 179, 180 (Tex. 1988) (stating that this rule does not 
apply in negligence cases governed by the comparative responsibility statute); 
see also Godwin v. Jessell, No. 
05-99-01824-CV, 2001 Tex. App. LEXIS 883, at *4-9 (Tex. App. – Dallas 2001, no 
pet.) (concluding that while “there is little case law 
defining the term ‘morally wrong’ acts,” knowing dishonesty, misrepresentation, 
and deceit were, as a matter of law, among them).

[9] 
Responsive Brief of the Real Parties in Interest at 11.

[10] Id. at 11.

[11] Id. at 34.

[12] Id. at 18.

[13] Id. at 53.

[14] Matthew 6:24 (“‘No one can serve two 
masters. Either he will hate the one and love the other, or he will be devoted 
to the one and despise the other. You cannot serve both God and 
Money.’”).

[15] See Restatement (Second) of Agency § 226 
(1958) (“A person may be the servant of two masters, not joint employers, at one 
time as to one act, if the service to one does not involve abandonment of the 
service to the other.”), cited in Garza v. Excel Logistics, Inc., 
100 S.W.3d 280, 287-88 (Tex.App.-Houston [1st Dist.] 
2002), rev’d on other grounds, 161 
S.W.3d 473 (Tex. 2005); Restatement 
(Third) of Agency § 7.03, reporters’ note d (2).

[16] Ante at ___.

[17] Supra note 8.

[18] Ante at ___.

[19] 211 S.W.3d 302, 305 (Tex. 2006) (“As a rule, 
arbitration of a claim cannot be compelled unless it falls within the scope of a 
valid arbitration agreement. But sometimes a person who is not a party to the 
agreement can compel arbitration with one who is, and vice versa.” (footnotes omitted)).

[20] MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 
1999) (citations, ellipses, brackets, and quotation marks omitted).

[21] 210 F.3d 524, 527 (5th Cir. 
2000).

[22] Meyer, 211 S.W.3d 
at 306-308.

[23] Ante at ___.

[24] Ante at 
___.