

# NUMBER 13-23-00042-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SCI TEXAS FUNERAL SERVICES, LLC
D/B/A "FUNERARIA DEL ANGEL
BUENA VISTA AND BUENA VISTA
BURIAL PARK,"                                                    Appellant,

v.

YVONNE HOLLENBECK,                                              Appellee.

On appeal from the 357th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Silva

Appellant SCI Texas Funeral Services, LLC d/b/a "Funeraria Del Angel Buena

Vista and Buena Vista Burial Park," appeal an order denying their motion to compel

arbitration and stay litigation pending arbitration. By what we construe as two issues, appellant argues (1) the trial court abused its discretion in denying its motion to compel because there exists an enforceable arbitration agreement, and appellee Yvonne Hollenbeck, daughter of the decedent Maria Magdalena Gonzalez, is bound by her status as a third-party beneficiary to the arbitration agreement; and (2) the trial court abused its discretion in denying appellant's motion to stay litigation predicated on its motion to compel. We reverse and remand.

## I. BACKGROUND

The underlying lawsuit arises from events surrounding Maria's embalmment and visitation services. In appellee's original petition, appellee alleged that Maria passed away on August 8, 2022, and Maria's remains were taken to Funeraria Del Angel Buena Vista in Brownsville, Texas. Lionel Lopez Gonzalez[1], Maria's husband and appellee's stepfather, entered into a contract with appellant for embalmment and visitation services,[2] and on August 16, 2022, the family held a viewing.

According to appellee, Maria's body was in a severely decomposed state at the time of the viewing, resulting in "a putrid odor of rotting flesh." Appellee described Maria's body as follows:

> [Maria's] left eye was unstable, and her left hand was severely decomposed with skin peeling off same. Before and during the viewing, [Maria's] left hand was covered by the right and a rosary laid over same to block the translucent skin flaking and falling off [Maria's] knuckle bones. Further, [Maria's] right ear was black, thin, and flat against her head, appearing

---

[1] The Court will refer to Lionel Lopez Gonzalez as Lopez.

[2] Only Lopez's signature appears on the contract. However, appellee avers that her brother, Alfred Hollenback Jr., paid for the services.

shriveled. [Maria's] neck and jaw line were not visible, and her chin appeared to melt into her upper clavicle chest area.

Appellee asserted claims of negligence, negligence per se, and gross negligence against appellant.

Appellant filed a motion to compel arbitration and to stay the suit pending arbitration. Appellant urged that Lopez had signed a contract containing an arbitration agreement; the matter involved interstate commerce; the arbitrator should decide issues pertaining to arbitrability, and the trial court should only resolve "nonsignatory" issues; and appellee, as a third-party beneficiary, was bound by this agreement. Appellant supported its motion to compel arbitration with, inter alia, a copy of the arbitration agreement, which stated in relevant part:

> ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION . . . . THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD[-]PARTY BENEFICIARY OF THIS AGREEMENT . . . .

In response to appellant's motion to compel, appellee argued that no valid and enforceable arbitration agreement exists between her and appellant as appellee is a nonsignatory to the agreement at issue. Moreover, appellee maintained that the theory of third-party beneficiaries does not bind her.

Appellant filed a response, and in an attached affidavit signed by Kenndra Salinas, an SCI employee, appellant averred that Salinas had met with Lopez, appellee's brother, and appellee regarding visitation services on August 9, 2022. Salinas was advised that

3

appellee would be making the decisions regarding the contracted arrangements. Salinas stated, "[Appellee] participated in finalizing the arrangements, provided me with direction regarding her mother's make-up and the clothes for her mother to wear for the visitation and funeral services, and signed the Personal Effects Inventory." The "Personal Effects Inventory" form dated August 9, 2022, containing appellee's signature above the "Releasing Agent/Next-of-Kin" signature line, was also attached to appellant's response.

The trial court signed an order denying appellant's motion to compel and stay litigation on January 11, 2023. This accelerated appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (authorizing interlocutory appeals under the Federal Arbitration Act (FAA)); *id.* § 171.098(a)(1) (authorizing interlocutory appeals under the Texas Arbitration Act (TAA)).

## II. ARBITRATION PROVISION

By appellant's first issue, appellant asserts the trial court abused its discretion in denying its motion to compel arbitration.

### A. Standard of Review and Applicable Law

"Under the FAA, 'a party seeking to compel arbitration must establish the existence of a valid arbitration agreement and the existence of a dispute within the scope of the agreement.'" *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023) (quoting *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 585–86 (Tex. 2022)). While we review a trial court's order denying a motion to compel arbitration for abuse of discretion, *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), questions of whether a valid arbitration agreement exists and whether an

4

arbitration agreement is binding on a nonparty are reviewed de novo. *Whiteley*, 672 S.W.3d at 376. A trial court abuses its discretion if it "acted without reference to guiding rules or principles or in an arbitrary or unreasonable manner." *In re Copart, Inc.*, 619 S.W.3d 710, 713 (Tex. 2021) (orig. proceeding) (per curiam) (cleaned up).

"Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *Jody James Farms, JV v. Altman Grp.*, 547 S.W.3d 624, 633 (Tex. 2018). "But sometimes a person who is not a party to the agreement can compel arbitration with one who is, and vice versa." *Whiteley*, 672 S.W.3d at 376 (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)) (footnotes omitted). "Courts have recognized six theories, arising out of common principles of contract and agency law, that may bind non[]signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." *Id.* (cleaned up). Specifically, appellant contends appellee is bound by direct-benefits estoppel, as a third-party beneficiary of the agreement, or both.

## B.    Analysis

We first consider whether appellant has met its burden of showing that appellee is bound by the arbitration provision as a third-party beneficiary as it is dispositive. At the outset, we note that we recently addressed a similar question in *SCI Texas Funeral Services, LLC v. Gonzalez*, No. 13-21-00453-CV, 2023 WL 3637979, at *4 (Tex. App.—Corpus Christi–Edinburg May 25, 2023, no pet.) (mem. op.).

5

In *Gonzalez*, the decedent's adult children and grandchildren sued the funeral home following the execution of a contract for visitation and embalmment services signed by a nonparty individual. *Id.* Allegations stemmed from the funeral home's purported treatment of the decedent's body; namely, a failure to properly embalm or store the decedent; a "fail[ure] to exercise due care in order to avoid leakage of embalming fluid/blood from Decedent's mouth, ears, nose and eyes"; and a "fail[ure] to properly care for Decedent's body, as would a person using ordinary care under the same or similar circumstances." *Id.* at *5. Appellees asserted causes of action for negligence, intentional infliction of emotional distress, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act (DTPA). *Id.* at *1. The contract at issue in *Gonzalez*, like here, provided that the funeral home was authorized "to prepare and care for the body of the decedent named in [the] Agreement and to conduct the funeral and services . . . listed in said Agreement" and contained language binding "any person who claims to be a third[-]party beneficiary of this Agreement." *Id.* at *3, *5.

We determined in *Gonzalez* that (1) the factual allegations in the live pleading concerned the handling of the decedent's remains in preparation for the funeral services, i.e., the subject of the contract at issue; (2) the contract's language did not leave any doubt as to the creation of a third-party beneficiary status; and (3) although the appellees—the decedent's immediate family members—had not been signatories to the contract, the appellees received the benefit of the funeral service contract. *Id.* at *4. Thus, the appellees were both subjected to the existing contract and bound to its arbitration provision. *Id.*

6

The facts now before us necessitate the same outcome. The contract here authorized the funeral home "to prepare and care for the body of [Maria] . . . and to conduct the funeral and services . . . listed in said Agreement." The factual allegations in the live pleading exclusively concern appellant's handling of Maria's remains in preparation for the funeral services and execution of said services, specifically alleging as follows:

a.    [Appellant] fail[ed] to provide a proper viewing of [Maria];

b.    [Appellant] fail[ed] to properly refrigerate [Maria] so as to avoid a foul smell emitting from [Maria] at the time of the funeral services;

c.    [Appellant] fail[ed] to properly care for [Maria's] body, as would a person using ordinary care under the same or similar circumstances;

d.    [Appellant] fail[ed] to exercise due care in [Maria's] refrigeration;

e.    [Appellant] fail[ed] to give [appellee] ample time to visit with the [Maria] at the viewing . . . .

In other words, the live pleading sets forth allegations which are "inextricably enmeshed" or "factually intertwined" with the underlying contract which provided for how Maria's body would be prepared for viewing and stored. *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 440 (Tex. 2017); *Rodriguez v. Tex. Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 432 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also Gonzalez*, 2023 WL 3637979, at *4.

Additionally, the contract contained language binding "any person who claims to be a third[-]party beneficiary of this Agreement," and the arbitration clause stated that it applied to "any claim or dispute." *See Henry*, 551 S.W.3d at 116 (noting that there exists a presumption favoring arbitration and a policy to construe arbitration clauses broadly);

7

*see also FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 691, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (concluding that board arbitration clauses, such as, "[a]ny dispute arising out of or in connection with this contract," "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"). Moreover, the parties here do not dispute that appellee is an immediate family member of the deceased who partook in the organization of the services and attended said service. Though appellee was not a signatory to the contract between appellant and Lopez, appellee received a benefit of the contracted service, and appellant's alleged ill performance of the contracted service is at the crux of appellee's suit. *See Henry*, 551 S.W.3d at 115; *see also Gonzalez*, 2023 WL 3637979, at *4 ("While appellees were not signatories to the contract, it has been held that contracts for funeral services can be intended for the benefit of immediate family members of the deceased."); *see generally Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023) ("A nonsignatory can seek the benefits of a contract either by suing based on the contract, or by conduct that deliberately seeks and obtains substantial benefits from the contract itself."). Therefore, appellee was bound by the arbitration agreement, and the trial court abused its discretion in denying appellant's motion to compel arbitration. *See Henry*, 551 S.W.3d at 115; *see also Gonzalez*, 2023 WL 3637979, at *4. We sustain appellant's first issue.

### III.   STAY PENDING ARBITRATION

By way of a second issue, appellant argues that the trial court abused its discretion in denying its motion to stay litigation pending arbitration. "The FAA generally requires

8

courts to stay lawsuits involving arbitrable issues if a party with the right to arbitration seeks a stay pending arbitration of those issues." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016) (per curiam); *see* 9 U.S.C.A. § 3; *see also Gonzalez*, 2023 WL 3637979, at *5. "On motion of a party to an arbitration agreement the trial court must order arbitration even though the order might result in less efficient, separate proceedings." *RSL Funding*, 499 S.W.3d at 430.

Having already determined that the trial court erred in denying appellant's motion to compel arbitration, the trial court must stay any further proceedings. *See* 9 U.S.C.A. § 3 (requiring stay of proceedings in trial court "upon any issue referable to arbitration"); *see also Gonzalez*, 2023 WL 3637979, at *5. We sustain appellant's second issue.

## IV.   CONCLUSION

We reverse and remand for proceedings consistent with this memorandum opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
19th day of October, 2023.