**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00342-CV**
_____

**W. EARL TOUCHSTONE
AND LEWIS BRISBOIS BISGAARD & SMITH LLP, Appellants**

**V.**

**GARRETT GAGLIANO, Appellee**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-07-09502-CV

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Appellants, an attorney and his law firm (hereinafter referred to collectively as LBBS), appeal the trial court's denial of their motion to dismiss the suit, or alternatively to abate it or compel arbitration. *See* Tex. R. App. P. 28.1; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). The Legislature has granted appellate jurisdiction over an interlocutory ruling denying a motion to compel arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1),

1

(b). For the reasons set forth below, we reverse the trial court's order denying the motion to dismiss, we reverse the trial court's order denying the motion to compel arbitration, and we remand the case for arbitration.

## I. Background

This is a lawsuit filed by a minority shareholder of a company against the law firm hired to represent the company in a suit against that minority shareholder.

Before becoming shareholders in the same company, Garrett Gagliano and Lee Burkett each owned one or more businesses that manufactured monitoring equipment for oilfield operations. In 2016, Gagliano purchased 25% of L&S Pro-Line from Burkett, leaving Burkett as the owner of 75% of the company. Gagliano and Burkett temporarily maintained a successful business venture. When their business relationship soured, Burkett and Pro-Line retained attorneys, Appellants ("LBBS"), to sue Gagliano and the companies he owned; Gagliano countersued. Following a jury trial and verdict, the trial court rendered judgment on the jury verdict in favor of Gagliano and against Burkett and Pro-Line. Burkett and Pro-Line appealed. Pro-Line's and Burkett's appeal from the final judgment in trial court cause number 18-06-07704 (the *Burkett v. Gagliano* suit) is still pending in this court.[1]

---

[1] The appellate case number for *Burkett v. Gagliano* is 09-21-00178-CV. Burkett also filed two petitions for writ of mandamus, which were assigned appeal numbers 09-21-00174-CV and 09-20-00261-CV. This court denied both of Burkett's petitions for writ of mandamus, one in December 2020 and the other in September 2021.

Shortly after Burkett and Pro-Line filed their appeal from the judgment in the *Burkett v. Gagliano* suit, Gagliano sued LBBS and the individual attorneys that had represented Burkett and Pro-Line in the suit against Gagliano.[2] Gagliano alleges that, as a minority owner of Pro-Line, he has standing to sue LBBS for legal malpractice and breach of fiduciary duty based on his status as a minority owner of Pro-Line, the entity LBBS represented in the *Burkett v. Gagliano* suit.

In Gagliano's suit against LBBS, LBBS filed a Rule 91a Hybrid Motion to Dismiss or, alternatively, Motion to Abate or to Compel Arbitration, alleging that Gagliano's suit had no basis in law or fact and that the suit is barred by the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003. The trial court denied the motion in its entirety, and LBBS filed this interlocutory appeal.

---

[2] When LBBS began representing Burkett in the suit against Gagliano, LBBS and Burkett signed a "Letter of Engagement." This letter states that Lee Burkett is the "sole client," and that he signed the letter on behalf of On Demand Staffing. Burkett, however, claims that he retained LBBS in his capacity as an owner of Pro-Line. Although the letter of engagement indicates that Burkett signed it on behalf of "On Demand Staffing," another one of Burkett's companies, the appellate record does not indicate that "On Demand Staffing" was in privity with Pro-Line or that "On Demand Staffing" has any relationship to this litigation. That said, LBBS attorneys announced during voir dire that they represented both Burkett and Pro-Line and there was no objection raised by Gagliano at trial to LBBS representing both Burkett and Pro-Line.

## II. Standards of Review

Because our resolution of appellants' issue concerning the denial of the motion to arbitrate obviates the need to discuss the remaining issues, we limit our discussion accordingly. *See* Tex. R. App. P. 47.1. We will first consider the denial of the motion to submit the case to arbitration pursuant to the Texas Arbitration Act. Whether a valid arbitration agreement exists is a question of law that we review de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). "When reviewing a denial of a motion to compel arbitration, we defer to the trial court's factual determinations that are supported by evidence but review the trial court's legal determinations de novo." *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013).

The trial court signed an order denying LBBS's motion to compel arbitration but did not issue written findings of fact or conclusions of law and none were requested. Therefore, we will affirm the court's judgment "'if it can be upheld on any legal theory that finds support in the evidence.'" *Sam Hous. Elec. Coop., Inc. v. Berry*, 582 S.W.3d 282, 288 (Tex. App.—Beaumont 2017, no pet.) (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## III. Analysis

**The Motion to Compel Arbitration**

LBBS entered into an engagement letter with Burkett (hereinafter also referenced as the Letter Agreement), which contains the following arbitration clause:

4

In the unlikely event a dispute concerning fees or anything else related to our representation arises, and we cannot, in good faith, arrive at a resolution of that dispute, Client and the Firm *agree that any controversy or claim arising out of or relating to this legal services agreement or representation by the Firm shall be resolved solely by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.* Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The parties hereto agree that any dispute which has a total value of less than $100,000.00 shall be decided by a single arbitrator. Any dispute with a total value of all claims in excess of $100,000.00 shall be decided by a panel of the three arbitrators. The parties further agree that any arbitration shall be conducted only by arbitrator(s) who have experience as a civil litigation attorney in Texas. The location of the arbitration shall be Houston, Texas. We have discussed the cost and time savings and important confidentiality considerations underlying our agreement to arbitrate. [emphasis added]

Gagliano claims the trial court lacked the authority to compel arbitration absent a valid agreement to arbitrate. *See Wagner v. Apache Corp.,* 627 S.W.3d 277, 282 (Tex. 2021). Whether a disputed claim falls within the scope of an arbitration agreement is a question we review de novo. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

Based on the record before us, we believe LBBS proved the existence of a valid written arbitration agreement regarding its attorney-client relationship with Burkett who was, as of the date of the Letter Agreement, the person designated by Pro-Line to make legal decisions with regard to litigation on behalf of Pro-Line. LBBS alleges that the arbitration provision signed by Burkett applies to Pro-Line. The Supreme Court has identified several theories upon which a non-signatory to an

5

arbitration agreement may be held bound by the agreement and compelled to arbitrate. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738-39 (Tex. 2005) (Finding that courts have identified six theories that may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third party beneficiary.). LBBS bases its motion to compel arbitration on the May 29, 2018 Letter Agreement signed by Lee Burkett. LBBS contends that the Letter Agreement binds Pro-Line, and consequently affects a derivative suit filed on Pro-Line's behalf, because Burkett ostensibly intended "to retain Lewis Brisbois in [its] capacity as Executive Manager for L&S Pro-Line in order to represent L&S Pro-Line[.]" The Letter Agreement states "that any controversy or *claim arising out of or relating to* this legal services agreement *or representation by the Firm shall be resolved solely by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.*" (emphasis added). LBBS claims that Gagliano, in this instance, is a third-party beneficiary of the arbitration agreement. The arbitration provision in the Letter Agreement contains the phrase "arising out of or relating to," a phrase previously interpreted by our courts to bind a non-party when the claims against the signatory party are so intertwined that they have "the same tap root." *See Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 307 (Tex. 2006) (which found that a party who received a "direct benefit" from the agreement, even though a non-signatory, may be bound by

6

the arbitration clause of the agreement); *see also Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 401 (Tex. 2020) ("The point of direct-benefits estoppel is to compel arbitration with non-signatories"). In *Meyer* the Supreme Court found that non-signatories to an arbitration agreement could compel arbitration under a contract in which each parties' rights were intertwined because they all depended upon one transaction (i.e., the sale of a Ford dealership to another dealer instead of the first bidder based upon Ford's "right of first refusal" agreement with original dealer were so intertwined that they "have the same tap root[]") *Meyer*, 211 S.W.3d at 307. The arbitration agreement in *Meyer* covered "any controversy" between the parties. *Id.* at 305. The language of the arbitration provision in the LBBS Letter Agreement was very broad because it covered "fees or anything else related to our representation… any controversy or claim arising out of or relating to this legal services agreement or representation by the Firm[.]"

LBBS suggests that "a non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision." LBBS contends that this principle enables it to compel Pro-Line and Gagliano to arbitrate their dispute with LBBS because Pro-Line "cannot assert a claim of legal malpractice without relying on the attorney-client relationship created by the legal services agreement and seeking to derive a direct benefit from that agreement." The attorney-client relationship between LBBS and Pro-Line was authorized by Burkett as part of

7

the lawsuit that Burkett and Pro-Line filed against Gagliano. The record shows that LBBS represented both Burkett and Pro-Line in *Burkett v. Gagliano*, and that the attorney-client relationship with LBBS was created in a written agreement with Burkett, which encompassed anything related to the firm's representation. The evidence also shows that Burkett was the person that Pro-Line authorized to make legal decisions about litigation on its behalf.

LBBS contends that even though Pro-Line was not a signatory to the Letter Agreement, Gagliano and Pro-Line can be compelled to submit to arbitration because Gagliano and Pro-Line seek to derive a benefit from the attorney-client relationship and the Letter Agreement between LBBS and Burkett. The record shows Burkett, as the majority shareholder and a member of Pro-Line and acting within his authority to handle litigation for Pro-Line, established an attorney-client relationship with LBBS. And, in Gagliano's suit against LBBS, Gagliano seeks to stand in Pro-Line's shoes to sue LBBS for its alleged malpractice in the *Burkett v. Gagliano* matter. We conclude that Gagliano therefore seeks to exercise a "direct benefit" from Burkett's engagement of LBBS, and Gagliano and Pro-Line are therefore bound by the terms of the Letter Agreement that Burkett reached with LBBS when Burkett and LBBS negotiated the terms on which LBBS would handle disputes as to "anything [] related" to its representation of a dispute arising out of the firm's representation. For these reasons, we hold that while not signatories to the arbitration agreement,

8

Gagliano and Pro-Line are bound by the Letter Agreement and its arbitration provision. *See Kellogg Brown & Root*, 166 S.W.3d at 739 ("[A] non-signatory plaintiff may be compelled to arbitrate if it seeks to enforce terms of a contract containing an arbitration provision.").

Gagliano is now seeking recovery on behalf of Pro-Line from LBBS for alleged damages caused by the alleged professional negligence of LBBS and for other claims related to the attorney-client relationship between LBBS, Burkett, and Pro-Line. All of Gagliano's claims, if any, only exist because of the legal representation authorized by Burkett and Pro-Line and undertaken by LBBS. In other words, Gagliano's derivative claims against LBBS have "the same tap root" in that they only exist, if they do at all, because of LBBS's representation of Burkett and Pro-Line, representation that Pro-Line received under the Letter Agreement which contained an arbitration clause. *Meyer*, 211 S.W.3d at 307. Thus, Gagliano is seeking a direct benefit that depends on a relationship governed by the Letter Agreement, which establishes the attorney-client relationship upon which Gagliano's claim is based. *See Kellogg Brown & Root*, 166 S.W.3d at 739. As discussed, the attorney/client relationship between LBBS and Pro-Line is based on an agreement between LBBS and Pro-Line that was authorized by Burkett when he was acting as an officer of Pro-Line. *See accord ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 275 (Tex. App.— Beaumont 2014, no pet.); *D.R. Horton-Tex., Ltd. v. Hernandez*, No. 09-21-00018-

9

CV, 2022 WL 119241, at *4 (Tex. App.—Beaumont Jan. 13, 2022, no pet.) (mem. op.). We conclude that the claims made by Gagliano on behalf of Pro-Line arise out of and relate to the legal representation by LBBS of Burkett and Pro-Line and fall within the scope of the arbitration clause of the Letter Agreement. We reverse the trial court's order denying arbitration.

### IV. Scope of Arbitration

Appellant's remaining issues shall be determined through the arbitration proceeding. Whether an issue falls within the scope of an arbitration agreement generally depends upon the wording of the arbitration agreement, and any doubts as to whether an issue falls in the scope of the arbitration provision should be resolved in favor of arbitration. *Henry,* 551 S.W.3d 111 at 115-16. The scope of an arbitration clause that includes all "disputes," and specifies that "'dispute' and 'disputes' are given the broadest possible meaning" and encompasses more than claims "'based solely on rights originating exclusively from the contract.'" *Id*. (citing *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017)) ("examining a forum-selection clause and noting the analogies between such clauses and arbitration agreements"). The arbitration provision at issue here expressly states that it includes "*any controversy or claim arising out of or relating to this legal services agreement or representation by the Firm[LBBS]*." (emphasis added). The word "controversy" means "a discussion marked especially by the expression of opposing

views**: DISPUTE**." (Merriam-Webster, https://www.merriam-webster.com/dictionary/controversy, last visited Oct. 4, 2023). Much like the arbitration provision in *Henry*, which included "all disputes," we conclude that the arbitration provision in the Letter Agreement is broad and expressly encompasses "any controversy or claim arising out of or relating to" the representation by LBBS and includes the claims brought by Gagliano against LBBS. See *Henry*, 551 S.W.3d at 116 (noting and applying the presumption of favoring arbitration and the policy of construing arbitration clauses broadly to disputes, even those indirectly related to the scope of the arbitration agreement based on the wording of the agreement). Pursuant to the Letter Agreement, all claims, counterclaims and defensive or responsive claims brought by the parties must be resolved through arbitration. We need not decide the TCPA motion, the Rule 91a motion, standing, or any issues brought in this appeal since all issues related to the Letter Agreement are subject to determination in the arbitration.

## V. Conclusion

We reverse the order denying the motion to dismiss and remand the trial court's order denying the motion to compel arbitration for further proceedings consistent with this opinion.

11

REVERSED AND REMANDED.

JAY WRIGHT
Justice

Submitted on December 5, 2022
Opinion Delivered November 9, 2023

Before Horton, Johnson and Wright, JJ.