IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00315-CV

 

LDF Construction, Inc., Lynn D. Foster, 

Mark W. Todd Architects, Inc. and 

Mark W. Todd,

                                                                                    Appellants

 v.

 

Sam Bryan, Connie Bryan, and Sammy 

R. Bryan, DDS, P. A.,

                                                                                    Appellees

 

 



From the 278th District Court

Walker County, Texas

Trial Court No. 24,273

______________  

 

No. 10-08-00348-CV

 

IN RE LDF CONSTRUCTION, INC. AND
LYNN D. FOSTER

 

Original Proceeding

____________

10-08-00407-CV

 

IN RE MARK TODD AND MARK W. TODD
ARCHITECTS

 

Original Proceeding

 



O P I N I O N










 

            This is one of the last combinations
of proceedings where a party has to pursue a mandamus proceeding if the Federal
Arbitration Act (FAA) might be applicable and also pursue an interlocutory
appeal if the Texas Arbitration Act (TAA) might be applicable.  The invitation
of the Texas Supreme Court has been acted upon.  See Am. Std. v. Brownsville Indep. Sch. Dist. (In re D. Wilson Constr. Co.), 196 S.W.3d 774,
780 n.4 (Tex. 2006) (“We again invite the Legislature, ‘[i]n the interests of
promoting the policy considerations of rigorous and expedited enforcement of
arbitration agreements, . . . to consider amending the Texas Act to permit
interlocutory appeals of orders issued pursuant to the Federal Act.’” (citing Jack
B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992)).  Effective September 1, 2009, section 51.016 of the Civil Practice and Remedies Code was amended to
allow an interlocutory appeal of an order denying a motion to compel
arbitration under the FAA.  See Tex.
Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon Supp. 2009).  These
proceedings, however, were filed before the effective date of the new statutory
provision.

            In these proceedings, the
appellants/relators have had to do things the hard way—file both an appeal and
petitions for a writ of mandamus.  It has made the task for both the trial
court and this Court more complex due to multiple issues and methods necessary
to insure that the proper procedural vehicle was used to obtain review. 
Because in this instance we conclude that the FAA applies, we dismiss the
interlocutory appeal, LDF Construction, Inc. v. Bryan, No. 10-08-00315-CV.  We conditionally grant the petitions for writ of mandamus to compel
arbitration filed by LDF Construction, Inc. and Lynn D. Foster (LDF) and Mark
Todd and Mark Todd Architects (Todd).

A Brief History

            Sam Bryan, an orthodontist, contracted
with Joyce Matlack, a California resident who specialized in dental-related
interior designs, to provide interior design services for a new office for Bryan.  Bryan then contracted with Todd to develop a set of master and schematic plans to
be designed according to the interior plans provided by Matlack.  Three years
later, LDF entered into an agreement with Bryan to build the new office.  The
construction of the office was to comply with the specifications and designs by
Todd.  Bryan’s contracts with LDF and Matlack contained arbitration provisions,
but the contract between Bryan and Todd did not.  

            When construction of the office did
not go as expected, Bryan, his wife, and Sammy R. Bryan, DDS, P.A. (Bryan) sued LDF, Todd, and Matlack and Matlack/Van Every Design, Inc. (Matlack).[1]  Todd, Matlack, and LDF each
moved to compel arbitration.  The trial court initially granted Matlack’s
motion to compel arbitration.  However, that ruling was withdrawn at the
hearing on Todd’s and LDF’s motions.  The trial court ultimately denied Todd’s
and LDF’s motions to compel arbitration but did not rule on Matlack’s motion. 
That motion remains pending in the trial court.  LDF and Todd filed separate
notices of appeal of the trial court’s decision and filed separate petitions
for a writ of mandamus.  Both notices of appeal were filed in one proceeding, Tex. R. App. P. 12.2(c), whereas each
mandamus was filed as a separate proceeding.  

General Law of Arbitration

 

            The Texas statutes governing
arbitration of disputes are found in Chapter 171 of the Civil Practice and
Remedies Code.  See Tex. Civ.
Prac. & Rem. Code Ann. §§ 171.001-171.098 (Vernon 2005).  The FAA,
which applies to "any maritime transaction or a contract evidencing a
transaction involving commerce," is found in title 9 of the United States
Code.  See 9 U.S.C. § 2.

            In evaluating a motion to compel
arbitration, a court must first determine whether a valid arbitration agreement
exists, and then whether the agreement encompasses the claims raised.  Am.
Std. v. Brownsville Indep. Sch. Dist. (In re D. Wilson Constr. Co.),
196 S.W.3d 774, 781 (Tex. 2006); see In re Dillard Dep't Stores, Inc.,
186 S.W.3d 514, 515 (Tex. 2006) (per curiam).  Whether a valid arbitration
agreement exists is a legal question subject to de novo review.  Id.  Although the Texas Supreme Court has repeatedly expressed a strong presumption
favoring arbitration, the presumption arises only after the party seeking
to compel arbitration proves that a valid arbitration agreement exists.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003) (emphasis
added).  Courts must resolve any doubts about an arbitration agreement's scope
in favor of arbitration.  In re FirstMerit Bank, N.A., 52 S.W.3d 749,
753 (Tex. 2001).  

            Arbitration agreements are interpreted
under traditional contract principles.  J.M. Davidson, 128 S.W.3d at
227.  If the trial court finds a valid agreement, the burden shifts to the
party opposing arbitration to raise an affirmative defense to enforcing
arbitration.  Id.  Absent a defense to enforcing the arbitration
agreement, the trial court has no discretion but to compel arbitration and stay
its own proceedings.  In re J.D. Edwards World Solutions Co., 87 S.W.3d
546, 549 (Tex. 2002) (per curiam).

            The types of issues raised as a
defense determine whether the arbitrator or the trial court resolves those
issues.  A court may determine a specific challenge to the validity of the
arbitration agreement but a challenge to the validity of the contract as a
whole, and not specifically to the arbitration agreement, must go to the
arbitrator.  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448-449, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); In re Labatt Food Serv., L.P.,
279 S.W.3d 640, 647-648 (Tex. 2009).  See Prima Paint Corp. v. Flood
& Conklin Mfg. Co., 388 U.S. 395, 403-404, 87 S. Ct. 1801, 18 L. Ed. 2d
1270 (1967) (claim of fraud in the inducement of arbitration clause itself may
be adjudicated by court, but court may not consider claim of fraud in the
inducement of the contract generally); In re Houston Pipe Line Co., No.
08-0800, 2009 Tex. LEXIS 468, *4, 52 Tex. Sup. J. 1098 (Tex. July 3, 2009) (“When a party disputes the scope of an arbitration provision or raises a
defense to the provision, the trial court, not the arbitrator, must decide the
issues.”); In re Morgan Stanley & Co., 293 S.W.3d 182, 185 (Tex.
2009) (“[D]efenses attacking the validity of a contract as a whole, and not specifically
aimed at the agreement to arbitrate, are for the arbitrator, not the court.”); Forest
Oil Corp. v. McAllen, 268 S.W.3d 51, 56 (Tex. 2008) ("[T]he party
opposing arbitration must show that the fraud relates to the arbitration clause
specifically, not to the broader contract in which it appears."); Perry
Homes v. Cull, 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators
generally must decide defenses that apply to the whole contract, while courts
decide defenses relating solely to the arbitration clause."); In re
Merrill Lynch Trust Co. FSB, 235 S.W.3d 185, 190 & n.12 (Tex. 2007)
(noting that a defense relating to the parties' entire contract rather than the
arbitration clause alone is a question for the arbitrators); In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001) (noting that the
defenses of unconscionability, duress, fraudulent inducement, and revocation
must specifically relate to the arbitration part of a contract and not the
contract as a whole if they are to defeat arbitration, and that validity of an
arbitration provision is a separate issue from validity of the whole
contract).  Further, questions that "grow out of the dispute and bear on
its final disposition," for example, whether conditions precedent have
been met, notice, time limits, laches, and estoppel, are procedural
arbitrability issues that are reserved for resolution by the arbitrator.  Howsam
v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L.
Ed. 2d 491 (2002).  In contrast, the trial judge decides questions of
substantive arbitrability, which implicate "gateway" issues, for
example, whether a particular agreement binds the parties to arbitrate.  Id. at 85. 

The Texas anomaly of TAA
vs FAA

 

            The TAA and FAA provide alternative
procedural vehicles for relief.  In re Educ. Mgmt. Corp., 14 S.W.3d 418,
425 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding).  A trial court's
order denying a motion to compel arbitration may be reviewed by interlocutory
appeal when the motion is brought under the TAA.  Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon
2005).  Until just recently and when the orders at issue in these proceedings
were signed, mandamus was the appropriate vehicle to challenge an order denying
arbitration under the FAA.  In re Bank One, N.A., 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam); EZ Pawn Corp. v. Mancias, 934 S.W.2d 87,
91 (Tex. 1996) (per curiam).  But see Tex.
Civ. Prac. & Rem. Code Ann. § 51.016 (Vernon Supp. 2009).  Prior to September 1, 2009, litigants like LDF and Todd who alleged entitlement to arbitration
under the FAA, and in the alternative, under the TAA, were burdened with the
need to pursue parallel proceedings—an interlocutory appeal of the trial
court's denial under the TAA, and a writ of mandamus from the denial under the
FAA.  Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992).

Which Arbitration Act
Applies?

 

            If the arbitration clause is
enforceable under the FAA, an analysis of enforceability under the TAA is
unnecessary.  See In re D. Wilson Constr. Co., 196 S.W.3d 774,
783-84 (Tex. 2006).  Accordingly, we first review the petition for writ of
mandamus to assess enforceability of the arbitration provision under the FAA.

            The FAA applies to "any maritime
transaction or a contract evidencing a transaction involving commerce."  See
9 U.S.C. § 2.  "'[C]ommerce' . . . means commerce among the several
States."  9 U.S.C. § 1.  Interstate commerce is not limited to the
interstate shipment of goods, but includes all contracts "relating
to" interstate commerce.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 754 (Tex. 2001).  The FAA "extends to any contract affecting
commerce, as far as the Commerce Clause of the United States Constitution will
reach."  L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In
re L & L Kempwood Assocs., L.P.), 9 S.W.3d 125, 127 (Tex. 1999) (per
curiam). 

            Bryan alleged in his first amended
petition that Matlack was a resident of California.  He also alleged that the
company, Matlack/Van Every Design, Inc. was a California company.  Bryan alleged that both Matlack and the company conducted business in Texas but did not
have a principle office in Texas and did not have a registered agent listed
with the Secretary of State.  Service of process was to be effectuated by serving
Matlack at her business address in Santa Cruz, California.  

            Bryan further alleged that in May of
2004 he met Matlack while attending an orthodontist meeting in Florida.  Matlack informed Bryan that she was an interior designer, specializing in the design
of dental offices.  Matlack eventually traveled to Texas to meet with Bryan to discuss designing a new office for Bryan in Huntsville, Texas.  Bryan approved a
contract submitted by Matlack.  The letterhead of the contract, which was
admitted into evidence at the hearing on LDF’s and Todd’s motions to compel
arbitration, indicated that Matlack’s business address was Santa Cruz, California.  According to Bryan, Matlack then sent design plans to Bryan for his approval
and eventually, a plan was approved.

            There was no other evidence about the
nature of the contract or services or source of supplies.  This is, however, a
commercial construction contract, and there was no effort to show that the
materials were of a uniquely local origin.  Even if the materials were of such
a nature, there is still an impact on interstate commerce.  See The
Daniel Ball, 77 U.S. 557, 565, 19 L. Ed. 999, 10 Wall. 557 (1870) (although
goods loaded and unloaded within the same state, interstate commerce was
impacted because some goods were destined to other states).  Further, Bryan does not contend that the FAA does not apply.  Accordingly, we hold that the FAA,
not the TAA, applies.

LDF and Foster

 

            In evaluating LDF’s motion to compel
arbitration, we first determine whether LDF proved a valid arbitration
agreement exists.  An agreement to arbitrate is valid except on grounds as
exist at law or in equity to revoke any contract. 9 U.S.C. § 2; see In
re Morgan Stanley & Co., 293 S.W.3d 182, 184 (Tex. 2009).  LDF
introduced its contract and arbitration provision into evidence at the hearing
on its motion to compel arbitration.  The provision states that “[a]ny claim
arising out of or related to the Contract…is subject to arbitration.”  Bryan’s only dispute with the validity of the provision, both to the trial court and on
appeal, is that the entire contract was procured by fraud.  As discussed more
fully below, this is not a specific challenge to the validity of the
arbitration provision but is a challenge to the validity of the contract as a
whole and such is left to resolution by the arbitrator.  See Buckeye
Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-446, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006).  There was no challenge to the validity solely of
the arbitration provision in the contract, and LDF thus satisfied the first
step.  

            Next, we determine whether the claims
raised by Bryan fall within the scope of the arbitration provision.  When
addressing this issue, we focus on the factual allegations involved in the
dispute and not on the legal causes of action raised by the parties.  In re
Conseco Fin. Servicing Corp., 19 S.W.3d 562, 568 (Tex. App.—Waco 2000,
orig. proceeding).  Any doubts as to whether the dispute falls within the scope
of the arbitration agreement should be resolved in favor of arbitration.  Id. (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 & n.8, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)).

            Bryan pled many causes of action
against LDF and Foster:  breach of contract, breach of implied warranty and
workmanlike performance, negligence, and various claims of fraud.  After
securing designs and plans from Matlack and Todd, Bryan contracted with LDF to
construct a new office.  The contract included Todd’s and Matlack’s work.  LDF
was to finish the office within 210 days and “execute the Work described in the
Contract Documents.”  The contract also listed Todd as the architect overseeing
the project.  Bryan alleged LDF knew the provisions in the contract relating to
the architect would not be followed.  

            Construction of the office did not go
well.  There were problems with the foundation, patient chairs were not
centered with the windows, electrical panels and conduit had to be moved, and
weeks of inactivity occurred at the jobsite.  When it came time to install the
sheetrock, Bryan began to question the ceiling heights.  Bryan alleges he
received either unintelligible answers or no answer at all from LDF, Matlack,
and Todd.  LDF, Matlack, and Todd eventually acknowledged that the ceiling
heights could be altered but for an additional cost.

            Bryan alleged that LDF, Todd, and
Matlack were aware of the problems with the ceiling height and discussed among
themselves ways to “cover-up” and fix the problems, rather than informing Bryan of the problems.  Bryan also alleged that LDF, Todd, and Matlack held themselves out
to be professionals who where competent and experienced.  Bryan claimed that
LDF, Todd, and Matlack contracted with him “to provide services that would
facilitate, correspond, and accentuate the endeavors contractually and
voluntarily undertaken by the other defendants” according to a specific scheme
and design approved by Bryan.  

            Bryan further alleged that LDF, Todd,
and Matlack failed with regard to workmanship and integrity of the work
undertaken by them.  It was alleged that Todd and Matlack prepared inaccurate,
incompatible plans while LDF, who had a duty to ensure that construction was
conducted in accordance with the plans, did not inform Bryan of the problems
with the plans upon LDF’s discovery of the problems.  Furthermore, Bryan alleged, LDF performed services in an unacceptable and unworkmanlike manner in that
among other things, deviations from the plans were made without informing Bryan.

            Bryan added a claim to his first
amended petition regarding a bill from a sub-contractor for carpentry work. 
Rough carpentry work was completed in October of 2007.  According to Bryan,
copies of Applications and Certificates for Payment, which were sworn to by LDF
for the months of September and October, indicated that no money was owed
regarding the carpentry.  Bryan claimed that upon closer inspection, the
certificates were inaccurate and that LDF knew they were inaccurate.  Bryan alleged that LDF provided the bill to the subcontractor who signed it and sent it on
to Bryan.  Bryan further alleged that LDF used this bill to cause Bryan financial injury, mental anguish, and emotional distress. 

            All of Bryan’s claims center on the
construction of Bryan’s office and the failures of the office’s construction to
comply with Bryan’s contract.  The language of the arbitration provision is
very broad and encompasses any claim “arising out of or related to” the
contract.  There is no claim by Bryan that does not have its origin outside the
relationship created by the contract.[2]  Even Bryan’s tort claims arise from the relationship around the contract.  Likewise, Bryan’s
claims in his personal capacity (non-signatory) against Foster in his
individual capacity (non-signatory) all arise out of that same relationship,
the one created by the contract, and but for the contract would not exist.  In
re Conseco Fin. Servicing Corp., 19 S.W.3d 562, 570 (Tex. App.—Waco 2000,
orig. proceeding).  Finally, we note that there is no suggestion that Foster’s
actions were in any capacity other than as an agent for LDF.

            Accordingly, we hold that all claims
against LDF, including those that are made against Foster, are within the scope
of the arbitration agreement.

Defenses

            Having determined that LDF proved the
existence of an arbitration agreement between the parties and that the claims
asserted by Bryan are within the scope of the arbitration agreement, we now
turn to the defenses to arbitration raised by Bryan and which appear to have
been relied upon by the trial court.  The primary defense is that the
construction agreement, including the arbitration agreement, was induced by
fraud.  This is a defense to the entire contract.  This is not just a defense
to the mandatory arbitration provision.  A plaintiff cannot sue for the
benefits on the contract, in essence sue for breach of contact, and sue on only
part of the contract.  See In re FirstMerit Bank, N.A., 52 S.W.3d
749, 755 (Tex. 2001) (“[A] litigant who sues based on a contract subjects him
or herself to the contract's terms.”).  Having brought the suit as a breach of
contract claim, a plaintiff cannot excise a single paragraph from the contract,
the arbitration clause, and reject it.  See In re Weekley Homes, L.P.,
180 S.W.3d 127, 133 (Tex. 2005) (“Having obtained these substantial actions
from Weekley by demanding compliance with the provisions of the contract, Von
Bergen cannot equitably object to the arbitration clause attached to them.”).  Bryan is not asserting that the fraud/unconsionablilty claim goes to only the arbitration
clause.  Since the claim is asserted to the contract as a whole, it is a claim
that is decided by the arbitrator, rather than the court.  See In re
Morgan Stanley & Co., 293 S.W.3d 182, 185 (Tex. 2009).

            Bryan also asserts that LDF cannot
avail itself of the arbitration provision because of conditions precedent to
enforcement that were not, and cannot now be, performed.  The provision states
that prior to arbitration, the parties will attempt to resolve the dispute,
first through the architect and then through nonbinding mediation.[3]  Bryan asserts that because
these provisions are conditions precedent to the institution of litigation and
cannot be complied with, the arbitration provision is negated.  We disagree. 
There is no indication in the provision that the parties intended to dispense
with arbitration if the other methods of resolution did not occur first.  In
re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007).  Further, Bryan cannot unilaterally skip the efforts to resolve the dispute by other methods by
skipping directly to litigation and thereby avoid the arbitration provision.  Cf.
Global Evangelism Educ. Ministries, Inc. v. Caddell, No. 04-08-00686-CV, 2009 Tex. App. LEXIS 1085, *5-6 (Tex. App.—San Antonio Feb. 18, 2009, no pet.) (mem. op.) (party that first filed suit rather than seeking
mediation cannot rely on the failure of conditions precedent to evade
arbitration).  To hold otherwise would allow the provision to be avoided simply
because one party chose to go directly to litigation.  The agreement provided
for three levels of dispute resolution before enforcement in the courts. 
Because this is an issue to be decided by the arbitrator,[4] the arbitrator may decide that the methods
of dispute resolution skipped by Bryan need to be utilized before proceeding to
arbitration; or the arbitrator may decide that at this point the other methods
of dispute resolution would be ineffective and, therefore, proceed with the
resolution of the disputes by arbitration.

            Bryan also asserts that LDF cannot
avail itself of the arbitration provision in Matlack’s contract.  In this
regard, Bryan argues that because LDF comes to court with unclean hands, LDF
cannot use a mandamus proceeding to compel arbitration as a non-signatory under
another party’s agreement.  Because of our holdings above, we are not utilizing
the arbitration provision in Matlack’s agreement but rather we are using the
provision in LDF’s own contract to compel arbitration of all claims Bryan has asserted against all the LDF related defendants.

            Accordingly, because Bryan has failed
to prove any valid reason why their claims against LDF should not be referred
to binding arbitration, we conditionally grant LDF’s petition for writ of
mandamus.  

Todd

            We now turn to the trial court’s
denial of Todd’s motion to also refer Bryan’s claims against Todd to
arbitration.  Todd had a written contract with Bryan but that contract did not
have an arbitration provision in it.  Thus, Todd is a non-signatory to any
arbitration agreement.  Bryan asserts that the trial court, having reviewed the
evidence, did not abuse its discretion in refusing to refer the claims raised
against Todd to arbitration.  We disagree.

            As a rule, arbitration of a claim
cannot be compelled unless it falls within the scope of a valid arbitration
agreement; but sometimes a person who is not a party to the agreement can
compel arbitration with one who is, and vice versa.  Meyer v. WMCO-GP, LLC,
211 S.W.3d 302, 305 (Tex. 2006).  Non-signatories to an agreement subject to
the FAA may be bound to an arbitration clause when rules of law or equity would
bind them to the contract generally.  In re Labatt Food Serv., 279
S.W.3d at 643; In re Weekley Homes, 180 S.W.3d at 131.  Several rules of
law and equity, such as the principles of equitable estoppel and agency, may be
used to compel arbitration.  See In re Labatt Food Serv., 279
S.W.3d at 644; see also Grigson v. Creative Artists Agency, L.L.C.,
210 F.3d 524, 527 (5th Cir. 2000).  

            Equitable estoppel applies to allow a
non-signatory to compel arbitration when the signatory to a written agreement
containing an arbitration clause must rely on the terms of the written
agreement in asserting its claims against the non-signatory.  Grigson v.
Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir. Tex. 2000).  When a
signatory's claims against a non-signatory make reference to or presume the
existence of the written agreement, the signatory's claims arise out of and
relate directly to the written agreement, and arbitration is appropriate.  Id.; Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 307 (Tex. 2006).  The Fifth
Circuit refers to this as the “intertwined-claims test.”  Grigson, 210
F.3d at 527.  The Texas Supreme Court has referred to this principal as “direct
benefits” estoppel.  See Meyer, 211 S.W.3d at 305 (“a person who
seeks by his claim ‘to derive a direct benefit from the contract
containing the arbitration provision’ may be equitably estopped from refusing
arbitration.” (emphasis added)).  

            Todd asserts that Bryan is equitably
estopped from preventing arbitration of the claims asserted against them.  As
with LDF, Bryan alleged various claims against Todd:  breach of contract,
breach of implied warranty and workmanlike performance, negligence, DTPA, and
various claims of fraud.  According to the first amended petition, Bryan began searching for an architect in 2004 to design his office based upon the design,
interior details, and overall schematics supplied by Matlack.  Bryan ultimately contracted with Todd.  Bryan’s contract with Todd provided that Todd would
devise a set of master and schematic plans to be designed according to the
plans and specifications provided by Matlack.  Matlack sent plans to Bryan for approval.  Todd was to design the appropriate plans to the approved
specifications set out by Matlack.  Todd drafted approximately 60 pages of
intricate drawings, design diagrams, roof plans, ceiling plans, etc.  

            Thus far, the allegations in this
section are those essentially unique to Todd or that relate to Todd and
Matlack.  Previously, we have discussed in detail, for the purpose of
addressing the scope of LDF’s arbitration provision, the allegations made
against LDF.  It is now necessary to repeat many of those same allegations. 
However, this time, the purpose of this review of the allegations is to show
how interrelated Bryan’s allegations against LDF, Todd, and Matlack are and
thus how impractical it would be to try to resolve the allegations against LDF
and Matlack in one forum and those against Todd in another.

            In 2007, LDF contracted with Bryan to construct the new building.  The contract included Todd’s and Matlack’s work. 
LDF was to finish the building within 210 days and “execute the Work described
in the Contract Documents.”  The contract also listed Todd as the architect overseeing
the project.  Bryan alleged that LDF knew the provisions in the contract
relating to the architect would not be followed.  

            As previously described, construction
of the office did not go well.  When it came time to install the sheetrock,
Bryan began to question the ceiling heights.  Bryan alleged he received either
unintelligible answers or no answer at all from LDF, Matlack, and Todd.  LDF,
Matlack, and Todd eventually acknowledged that the ceiling heights could be
altered but for an additional cost.  As construction problems mounted, Bryan began to investigate the cause.

            After a review of the plans, Bryan learned that the plans of Todd and Matlack were incompatible and that Todd’s plans
did not incorporate Matlack’s designs.  Bryan alleges that LDF, Todd, and
Matlack were aware of the problems and discussed among themselves ways to
“cover-up” and fix the problems, rather than informing Bryan of the problems. 
LDF, Todd, and Matlack, Bryan alleged, held themselves out to be professionals
who where competent and experienced.  Bryan claimed that LDF, Todd, and Matlack
contracted with him “to provide services that would facilitate, correspond, and
accentuate the endeavors contractually and voluntarily undertaken by the other
defendants” according to a specific scheme and design approved by Bryan.  

            Bryan further alleged that LDF, Todd,
and Matlack failed with regard to workmanship and integrity of the work
undertaken by them.  Todd and Matlack prepared inaccurate, incompatible plans
while LDF, who had a duty to ensure that construction was conducted in
accordance with the plans, did not inform Bryan of the problems with the plans
upon LDF’s discovery of the problems.  Furthermore, Bryan alleged, LDF
performed services in an unacceptable and unworkmanlike manner in that among
other things, deviations from the plans were made without informing Bryan.

            In this instance, the claims against
Todd are so intertwined and interdependent with the claims against LDF and
Matlack, both of which have arbitration provisions in their contracts with Bryan, that it would be impractical to resolve the disputes against them in arbitration
without simultaneously resolving the claims against Todd.  

Defenses

            Bryan asserts that Todd cannot assert
equitable estoppel to compel Bryan to arbitration because Todd has unclean
hands.  Bryan relies upon the principle in law that he who seeks equity must do
equity.  See Truly v. Austin, 744 S.W.2d 934, 938 (Tex. 1988) (“It is well-settled that a party seeking an equitable remedy must do equity and
come to court with clean hands.”).  A party seeking to invoke this equitable
doctrine must show that he has been seriously harmed and the wrong complained
of cannot be corrected without applying the doctrine.  City of Fredericksburg v. Bopp, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.).  Bryan asserts that at the hearing he proved Todd did not come to court with “clean
hands.”  Specifically, Bryan argues that Todd’s attorney admitted that there
was a discrepancy in the ceiling height.  Further, he argues that in an email
presented at the hearing, LDF knew of the discrepancies and sent nineteen
“requests for information” to Todd requesting information from Todd on how to
proceed.  According to the email, Todd told LDF how to proceed regarding the
ceiling height discrepancies. 

            Todd and LDF assert that Bryan did not present any evidence of “unclean hands” at the hearing.  Specifically, Todd
and LDF assert that this Court cannot rely on the email because it was not
properly introduced into evidence at the hearing.  We need not resolve whether
trial counsel’s references to documents not otherwise introduced into evidence
was evidence properly before the trial court.  Even if we consider the email
and argument of counsel as evidence regarding the conduct of Todd, it would
only go so show a possible breach of the contract and is not of the character
of evidence that shows “unclean hands” such as to defeat the application of the
doctrine of collateral estoppel to compel Bryan to arbitrate the claims against
the non-signatory to the arbitration agreement, Todd, along with the claims
that are subject to arbitration against LDF and Matlack.

            Bryan also argues that the trial court
had discretion not to apply equitable estoppel, even if it could be applied in
the same circumstances.  We disagree.  "A trial court has no 'discretion'
in determining what the law is or applying the law to the facts." 

Meyer v. WMCO-GP, LLC, 211 S.W.3d 302, 308 (Tex. 2006) (quoting, Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)).

            Accordingly, we hold that Bryan’s
claims against Todd should also have been referred to arbitration and
conditionally grant Todd’s petition for writ of mandamus.

Matlack

 

            Finally, we note that the trial court
withdrew its order which referred the claims against Matlack to arbitration,
holding that the order was rendered without adequate notice to Bryan.  Bryan conceded in his brief filed with this Court that he does not contest the
validity of the Matlack arbitration agreement.  Matlack filed amicus briefs
with this Court in these proceedings in support of having all the claims of Bryan against all the defendants referred to arbitration together.  We have no reason to
believe that the trial court will not grant Matlack’s pending motion to refer Bryan’s claims against Matlack to arbitration, especially in light of the discussion and
holdings herein.  Because the trial court has not ruled on Matlack’s pending
motion, because we have no proceeding before us which addresses that motion,
and further because we cannot compel the trial court to rule on the motion in a
certain way, we decline at this time to mandate the trial court’s ruling on
that motion.  See In re Salazar, 134 S.W.3d 357, 358 (Tex. App.—Waco 2003, orig. proceeding); see also State ex rel. Curry v. Gray,
726 S.W.2d 125, 128 (Tex. Crim. App. 1987).

Conclusion 

 

            In summary, we conditionally grant
LDF’s and Todd’s petitions for writ of mandamus.  A writ will issue only if the
trial court fails to withdraw its order denying the abatement of the trial
court proceedings and the referral of Bryan’s claims against LDF and Todd to
binding arbitration within 21 days from the date of this opinion.  Further, the
appeal by LDF and Todd is dismissed.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis                                                             

Appeal
dismissed

Petitions
conditionally granted

Opinion
delivered and filed March 10, 2010

[CV06]









[1] Bryan, in response to Todd’s and LDF’s petitions for writ of mandamus, conceded the
validity of the Matlack arbitration provision but, nevertheless, sued Matlack
along with Todd and LDF.





[2] The
only claim Bryan contends was outside the scope of the arbitration provision is
his claim pursuant to the fraudulent lien statute.  Tex. Civ. Prac. & Rem. Code § 12.002 (Vernon Supp. 2009). 
Nevertheless, this claim also falls within the scope of the arbitration
provision because, but for the contract with LDF, the subcontractor would not
have incurred costs of performing carpentry work for which he sought payment
from Bryan.  See In re Conseco Fin. Servicing Corp., 19 S.W.3d
562, 570 (Tex. App.—Waco 2000, orig. proceeding).  





[3] We
note that while these proceedings were pending, we abated the proceedings for
mediation.  A settlement was not reached.





[4] Howsam
v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85, 123 S. Ct. 588, 154 L.
Ed. 2d 491 (2002).