Rene VAN ZANTEN, Westhoff Ranch, LP, and Cookin' with Gas, LP, Appellants,

v.

ENERGY TRANSFER PARTNERS, L.P., Energy Transfer Company a/k/a La Grange Acquisition, LP, ETC Marketing, Ltd., Houston Pipe Line Company, L.P., Energy Transfer Partners GP, L.P., Energy Transfer Partners LLC, LA PG, LLC, LGM, LLC, and HPL GP, LLC, Appellees.

No. 01–08–00996–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 24, 2010.

James L. Reed Jr., Looper, Reed & McGraw, P.C., Houston, TX, for Appellants.

Charles W. Schwartz, Skadden, Arps, Slate, Meagher & Flom LLP, Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, ALCALA, and MASSENGALE.

## OPINION

ELSA ALCALA, Justice.

This appeal concerns plaintiffs who seek to compel arbitration with defendants pursuant to an arbitration agreement between the defendants and a company that markets and sells the plaintiffs' product to the defendants. The plaintiffs are appellants, Rene van Zanten, Westhoff Ranch, LP, and Cookin' with Gas, LP (collectively, "the Owners"). The Owners contend the trial court erred by refusing to compel arbitration of their claims filed against the defendants, appellees, Energy Transfer Partners, L.P., Energy Transfer Company a/k/a La Grange Acquisition, LP, ETC Marketing, Ltd., Houston Pipe Line Company, L.P., Energy Transfer Partners GP, L.P., Energy Transfer Partners LLC, LA PG, LLC, LGM, LLC, and HPL GP, LLC (collectively, "the Energy Companies"). In their sole issue, the Owners contend the trial court erred by rendering judgment staying the arbitration because under Texas law the direct benefits estoppel doctrine allows non-signatories to an arbitration agreement to compel arbitration. We conclude that the direct benefits estoppel doctrine is not a proper basis to allow the plaintiff Owners to compel arbitration based on an arbitration agreement to which they are not signatories. We affirm.

## Background

The Energy Companies are in the natural gas marketing and transportation business. Roughly fifteen percent of all natural gas produced in the United States flows through their gas gathering and transportation pipelines. Houston Pipe Line is a major purchaser of natural gas in the Gulf Coast, South Texas, and East Texas areas.

The Owners include an individual royalty owner who resides in Travis County, Texas, and working interests owners in oil and gas properties located in Jackson County, Texas. The Jackson County Owners are signatories to an operating agreement with Encon Services, Inc. ("Encon"); the agreement provides that Encon will sell and market their gas.

Encon has a gas purchase agreement with Houston Pipe Line. Pursuant to this agreement, Encon sold the Owners' gas to Houston Pipe Line. In this agreement, Encon represents that it acts as an agent for itself and "all other interest owners." The agreement between Encon and Houston Pipe Line also contains an arbitration clause that provides that "... all claims, demands, causes of action, disputes, and other matters arising out of or relating hereto, whether sounding in contract, tort or otherwise shall be resolved by binding arbitration pursuant to the Federal Arbitration Act."

The Owners alleged that the Energy Companies, individually and collectively, engaged in an intentional scheme to ma-

nipulate the Houston Ship Channel natural gas price index. In July 2007, the Federal Energy Regulatory Commission issued a show cause order as to why the Commission should not find that the Energy Companies manipulated wholesale natural gas markets at the Houston Ship Channel. Based on this alleged misconduct, the Owners filed a Class Action Arbitration Complaint with the American Arbitration Association. The Energy Companies filed an application to stay the arbitration proceeding in district court. The Owners moved for summary judgment on the basis that they were, as a matter of law, entitled to arbitrate their claims. The Energy Companies filed a response and cross-motion for summary judgment, asserting that, because the Owners were not signatories to Encon's contract with Houston Pipe Line, the Owners were not entitled to compel arbitration. After both sides filed responses, the trial court denied the Owners's summary judgment motion and granted the Energy Companies motion, rendering final judgment staying arbitration.

## Direct Benefits Estoppel

Although the parties agree that the theory of "direct benefits estoppel" precludes a defendant from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes, the Owners contend we should extend that concept to include the opposite situation. The Owners assert the estoppel theory should be extended to enable a plaintiff who claims to have received direct benefits from a contract containing an arbitration clause, to which the plaintiff is not a signatory, to compel arbitration of claims arising from that contract against a defendant who is a signatory to the agreement.

### A. Applicable Law

When the facts are undisputed, as here, a summary judgment presents a question of law that we review de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Huffhines v. State Farm Lloyds,* 167 S.W.3d 493, 496 (Tex.App.-Houston [14th Dist.] 2005, no pet.).

 The parties agree that the Federal Arbitration Act (FAA) [1] applies to this case. To determine whether an arbitration agreement under the FAA is binding on a non-signatory, Texas courts apply Texas procedural rules. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130 (Tex. 2005); *see also Arthur Andersen LLP v. Carlisle,* — U.S. ——, ——, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009) (stating that state contract law governs ability of non-signatories to enforce arbitration provisions). "Generally, only signatories to an arbitration agreement are bound by the agreement." *In re James E. Bashaw & Co.,* 305 S.W.3d 44, 54 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding) (citing *Brown v. Pac. Life Ins. Co.,* 462 F.3d 384, 398 (5th Cir.2006)). However, "[a] person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." *Id.* (quoting *Meyer v. WMCO-GP, LLC,* 211 S.W.3d 302, 304 (Tex.2006)). "Estoppel is one of five or six instances in which the federal circuit courts require arbitration with nonsignatories." *In re Merrill Lynch Trust Co.,* 235 S.W.3d 185, 191 (Tex.2007) (citing cases from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits).

As stated by the Fifth Circuit, "[I]n certain limited instances, pursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration

1. 9 U.S.C.S §§ 1–16 (LexisNexis 2008).

against a signatory-plaintiff." [2] *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 526 (5th Cir.2000); *see also Wash. Mut. Fin. Group, LLC v. Bailey,* 364 F.3d 260, 267 (5th Cir.2004) (stating that equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes"). The Texas supreme court, relying on federal cases such as *Grigson,* has stated the theory similarly. In *Meyer v. WMCO–GP, LLC,* the supreme court stated the rule as follows, "We have held that a person who seeks by his claim 'to derive a direct benefit from the contract containing the arbitration provision' may be equitably estopped from refusing arbitration." 211 S.W.3d 302, 305 (Tex.2006). The supreme court has also stated, "[A] non[-signatory] may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself." *In re Weekley Homes,* 180 S.W.3d at 132.

### B. Analysis

 Here, the fact pattern does not fit the description of the estoppel theory in *Grigson. See Grigson,* 210 F.3d at 526. The defendants, the Energy Companies, are the signatories, not the non-signatories. The plaintiffs, the Owners, are the non-signatories. In other words, in this case there is no "non-signatory-to-an-arbitration-agreement-defendant" and no "signatory-plaintiff." *See id.* Moreover, as stated in *Washington Mutual,* the Energy Companies are not "claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." 364 F.3d at 267. Under the estoppel theory set forth in *Grigson,* therefore, the Owners may not compel arbitration. *See Grigson,* 210 F.3d at 526.

This case is also distinguishable from the Texas supreme court cases applying direct benefits estoppel. In *Meyer,* the party "seek[ing] by his claim 'to derive a direct benefit from the contract containing the arbitration provision'" is the party who may be estopped. 211 S.W.3d at 305. Here, it is the Owners who are seeking the benefit of a contract to which they are non-signatories, and they are attempting to offensively invoke the contract's arbitration clause against a signatory. They are not seeking to "estop" the Energy Companies from anything in the sense that the Energy Companies do not seek to enforce one provision yet evade another with respect to a non-signatory. Likewise, in *In re Weekley Homes,* the non-signatory was compelled to arbitrate by seeking benefits under the contract. 180 S.W.3d at 132. Here, the non-signatories are not being compelled to arbitration, but are seeking to compel arbitration. We conclude, therefore, that the Owners may not rely on the theory of direct benefits estoppel to compel arbitration under the facts of this case. *See Meyer,* 211 S.W.3d at 305; *In re Weekley Homes,* 180 S.W.3d at 132; *see also In re Kellogg, Brown & Root, Inc.,* 166 S.W.3d 732, 739–40 (Tex.2005) (stating that under "direct benefits estoppel, a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes").

 The Owners acknowledge that the facts of this case do not fit within the facts of other cases applying direct benefits estoppel. They assert, instead, that estoppel is "an evolving doctrine" and that there is no authority holding that estoppel "is strictly confined to one set of facts or circumstances." Estoppel is an equitable

---

**2.** The Fifth Circuit refers to this estoppel theory as "equitable estoppel," while the Texas

supreme court has referred to its theory as "direct benefits estoppel."

doctrine and does depend on the facts of each case. *See In re Weekley Homes,* 180 S.W.3d at 134–35. However, situations in which estoppel applies all have one fact in common: the party to be estopped must have engaged in some conduct on which the other party relied. *See, e.g., Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex.2008) ("Estoppel, on the other hand, generally prevents one party from misleading another to the other's detriment or to the misleading party's own benefit."); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 515–16 (Tex.1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."); *Inimitable Group, L.P. v. Westwood Group Development II, Ltd.,* 264 S.W.3d 892, 902 (Tex.App.-Fort Worth 2008, no pet.) ("Estoppel is defined in general as conduct which causes the other party to materially alter his position in reliance on that conduct.").

In this case, the Owners have not identified any conduct of the Energy Companies on which the Owners relied in deciding to file their claims in arbitration rather than in court. Absent some conduct on the part of the Energy Companies that can form the basis of an estóppel, the Owners cannot prevail on this theory. *See Ulico Cas. Co.,* 262 S.W.3d at 778; *Johnson & Higgins of Tex., Inc.,* 962 S.W.2d at 515–16; *see also Inimitable Group, L.P.,* 264 S.W.3d at 902 ("One of the essential requisites of estoppel is a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine."); *see also In re Trammell,* 246

S.W.3d 815, 826 (Tex.App.-Dallas 2008, orig. proceeding) (noting detrimental reliance is element of estoppel and nothing in record showed non-signatory relied on arbitration clause he was seeking to enforce).

### Agent

■ In their brief to this Court, the Owners also assert that they may compel arbitration because Encon was acting as their agent when it entered the contract containing the arbitration clause with Houston Pipe Line. We have reviewed the Owners' motion for summary judgment, and Encon's status as the Owners' agent is not asserted in the motion as a ground for summary judgment. Because this ground for summary judgment was not raised in writing to the trial court, it may not serve as a basis to reverse the trial court's judgment. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993) (summary judgment motion "must stand or fall on the grounds expressly presented in the motion").

### Conclusion

We overrule the sole issue and affirm the judgment of the trial court.