**Reversed and Remanded and Memorandum Opinion filed February 5, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00263-CV

_____

**GUNDA CORPORATION, LLC AND RAMESH GUNDA, Appellants**

**V.**

**DAVID H. YAZHARI, Appellee**

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2011-69189**

## MEMORANDUM OPINION

Appellants, Gunda Corporation, LLC and Ramesh Gunda, appeal the trial court's denial of their motion to compel arbitration of the claims of appellee, David H. Yazhari. We reverse and remand.

# I. BACKGROUND

David Yazhari alleges that in January 2007, Ramesh Gunda, the sole owner and president of Gunda Corporation, Inc. ("GC, Inc."), solicited Yazhari to leave his solely owned business, Multitrans Transportation Consultants, Inc., to work for GC, Inc. Specifically, Yazhari alleges that he was to manage and expand GC, Inc. in return for a "six-figure salary," benefits, and one-third ownership of GC, Inc. On February 12, 2007, Yazhari began working for GC, Inc. as Director of Traffic and Transportation Engineering.

On February 12, 2008, GC, Inc. presented a "Policies and Procedures Manual" to its employees. Each employee was required to sign an acknowledgment that he or she (1) had read the "Policies and Procedures"; (2) understood that as a condition of employment, he or she must abide by the "Policies and Procedures"; and (3) understood that, as a result of his or her failure to consent, he or she would be disciplined and "may be terminated at the Company's sole discretion."

At that same time, each employee was also required to sign an acknowledgment that he or she (1) had read the policy on drug testing and drug and alcohol use; (2) understood that he or she must consent to a drug test when requested as a condition of employment; and (3) understood that, as a failure to consent, he or she would be disciplined and "may be terminated at the Company's sole discretion." In the acknowledgment the employee also agreed to indemnify "the Company, any Medical Review Officer, and any testing laboratory . . . for any claim arising from or related to any drug test under the Company's police and procedures" on drug testing and drug and alcohol use.

On the same day, GC, Inc. also adopted an "Arbitration Policy and Agreement" ("the arbitration agreement") which Gunda alleges each employee was required to read and sign "[i]n order to continu[e] employment." The arbitration agreement provided, in part:

> Any controversy between Employee and the Company or any of its owners, employees, officers, agents, affiliates, or benefit plans, arising from or in any way related to this Agreement, Employee's employment with the Company, or the termination of Employee's employment with the Company, shall be resolved exclusively by the terms of this Agreement.

The arbitration agreement further provided that "[t]he obligation to arbitrate under this policy will continue beyond the end of Employee's employment."

On February 1, 2010, GC, Inc. converted to Gunda Corporation, LLC ("GC, LLC"). Appellees did not transfer or provide the one-third ownership interest of either GC, Inc. or GC, LLC to Yazhari.

On October 18, 2010, appellants terminated Yazhari's employment. On November 15, 2011, Yazhari filed his original petition against appellants, alleging claims for age and disability discrimination and retaliation under the Texas Commission on Human Rights Act, and intentional infliction of emotional distress. Yazhari also asserted a number of claims related to appellants' failure to transfer one-third ownership of GC, LLC to Yazhari, including fraudulent inducement, conversion, breach of fiduciary duty, shareholder oppression, breach of contract, demand for accounting, and declaratory judgment.

Relying on the arbitration agreement purportedly signed by Yazhari on February 15, 2008, appellants moved to compel arbitration of Yazhari's claims. Specifically, appellants relied upon a copy of the agreement as they were unable to produce the original agreement signed by Yazhari. By affidavit, Yazhari denied ever having seen or having signed the arbitration agreement, and claimed that the signature on the agreement was not his. Yazhari further asserted that the arbitration agreement is illusory because appellants had reserved the right to unilaterally modify the policies and procedures contained in the manual, including the arbitration agreement. Finally, Yazhari argued that no arbitration agreement exists as to the parties, and the arbitration agreement does

3

not apply to his claims because GC, LLC was not in existence at the time the arbitration agreement was formed.

The trial court held a non-evidentiary hearing on February 17, 2012, and denied the motion to compel arbitration on February 28, 2012. This interlocutory appeal followed.

## II. ANALYSIS

Appellants urge that the trial court erred as a matter of law when it denied the motion to compel arbitration under the parties' February 15, 2008 Arbitration Policy and Agreement because appellants established that:

- Yazhari consented to (signed or accepted by continued employment) the terms of the arbitration agreement (Issue No. 1A);

- Yazhari's claims are within the scope of the arbitration agreement (Issue No. 1B);

- the arbitration agreement is enforceable because it is not illusory (Issue No. 2); and

- Gunda, LLC, was a converted entity, and thus, a proper party to enforce agreement (Issue No. 3).

Appellants also argue that even if they did not establish Yazhari's consent as a matter of law, the trial court erred in failing to hold an evidentiary hearing to resolve disputed fact questions concerning the arbitration agreement (Issue 1A). As an alternative basis to reverse the trial court's order, appellants urge that the trial court erred when it failed to order arbitration under the arbitration clauses contained in GC, Inc.'s shareholder agreement and GC, LLC's member agreement (Issue No. 4).

## A. Standard of Review

A party seeking arbitration of claims must establish the existence of a valid arbitration agreement, and that the claims fall within the scope of that agreement. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding) (per curiam); *McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex. App.—Houston [14th Dist.]

4

2007, no pet.).[1]  Whether a valid arbitration agreement exists is a legal question subject to de novo review.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).  If the trial court finds a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing the arbitration agreement.  *Id.* Absent a defense to enforcement of the agreement, the trial court has no discretion but to compel arbitration.  *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (orig. proceeding) (per curiam).  Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exits.  *J.M. Davidson, Inc.*, 128 S.W.3d at 227.

## B. Whether Yazhari Consented to Arbitration

The elements of a valid arbitration agreement are: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  The term "meeting of the minds" refers to the parties' mutual understanding and assent to the expression of their agreement. *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454 (Tex. App.—Dallas 2012, pet. denied).  Contracts require mutual assent to be enforceable.  *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam).  Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind.  *Id.*  Whether the parties reached an agreement is a question of fact. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

---

[1] The arbitration agreement provides that it is governed by the Federal Arbitration Act ("FAA"). Yazhari does not dispute that the FAA applies, only that no valid arbitration agreement exists.  However, Texas procedure controls the determination of arbitrability.  *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10 (1984).  Under Texas law, the trial court "summarily" determines the applicability of an arbitration clause.  *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex. 1992); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b) (West 2011).

5

In Issue No. 1A, appellants contend that Yazhari consented to arbitration. On the question of consent, the trial court considered competing evidence. Appellants aver that Yazhari, along with other employees, was presented with the manual, the written acknowledgment of the manual, the written acknowledgment of the drug testing policy, and the written arbitration agreement. Appellants' exhibits include signed acknowledgments that Yazhari read and understood the manual and the drug testing policy and a copy of the arbitration agreement bearing Yazhari's signature directly beneath where it states, "UNDERSTOOD AND AGREED." Ramesh Gunda stated in his affidavit that "Yazhari signed and returned all three acknowledgments, including the document entitled 'Arbitration Policy and Agreement,' dated February 15, 2008." Appellants, alternatively, contend that because Yazhari continued his employment with GC, Inc. and GC, LLC for over two years after he had signed the agreement, he accepted the agreement as a matter of law.[2]

Yazhari, on the other hand, points out that appellants never produced the original arbitration agreement signed by Yazhari. Yazhari, in an affidavit attached to his response to the motion to compel arbitration, denied having seen or having signed the arbitration agreement, although he admits that he received a copy of the manual. In his affidavit attached to his response to the motion to compel arbitration, Yazhari averred, in relevant part:

> 4. I was not provided any policies and procedures or employee handbook at the time of my hire, and I did not sign any agreement to arbitrate.
>
> 5. At no time during my employment with Gunda Corporation, Inc. was I presented with or asked to sign an arbitration agreement. I was never notified of any arbitration policy, nor have I signed any document that is or

---

[2] An at-will employee who receives notice of an employer's arbitration policy and continues or commences employment accepts the terms of the agreement as a matter of law. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (orig. proceeding) (per curiam); *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding).

purports to be an arbitration agreement, including specifically Exhibit C to *Defendant's [sic] Motion to Compel Arbitration and Stay Proceedings*.

6.  I had never seen the document that is Exhibit C to defendant's [sic] motion [the purported arbitration agreement] at any time prior to receiving a copy of the motion. The signature that appears on Exhibit C is not my signature, and was not affixed by me.

7.  I have not agreed to arbitrate any claims against Gunda Corporation, or any other individual or entity related thereto.

8.  During my tenure with Gunda Corporation, Inc. I received only 1 volume of policies and procedures, a true and correct copy of which is attached hereto and incorporated by reference as Exhibit A-1. No where [sic] in these policies and procedures is there an arbitration agreement of any kind, nor any mention or reference to such an agreement or policy.

\* \* \*

12.  At no time during my employment with the new entity, Gunda Corporation, LLC, did I receive any handbook of policies and procedures, any notice of an arbitration policy, or any document that is or purports to be an arbitration agreement.

13.  I have not agreed to arbitrate, nor signed any document agreeing to arbitrate, any claims against Gunda Corporation, LLC, nor any individual or entity related thereto.

We conclude that the evidence raised a fact issue regarding the formation of an agreement to arbitrate, either by his signature or by his continued employment after notice of the agreement. Thus, the evidence does not establish consent as a matter of law. Having concluded that the evidence raised a fact issue, we must determine whether the trial court erred in failing to hold an evidentiary hearing.

As previously outlined, Texas procedure controls the determination of arbitrability of this dispute. *See Southland Corp.*, 465 U.S. at 16 n.10. Under Texas law, the trial court "summarily" determines the applicability of an arbitration clause. *See Jack B. Anglin Co., Inc.*, 842 S.W.2d at 268–69; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b). However, a motion to compel arbitration is procedurally akin to a motion

for summary judgment and is subject to the same evidentiary standards. *See In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). Thus, the party alleging an arbitration agreement must present summary proof that an agreement to arbitrate requires arbitration of the dispute. *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 897 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *Jebbia*, 26 S.W.3d at 657. The party resisting may then contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Jim Walters Homes, Inc.*, 207 S.W.3d at 897; *Jebbia*, 26 S.W.3d at 757. If a material issue of fact is raised, an evidentiary hearing is necessary. *Jim Walters Homes, Inc.*, 207 S.W.3d at 897; *see also Jack B. Anglin Co.*, 842 S.W.2d at 269. Stated differently, trial courts do not have the authority to resolve disputed fact issues concerning the formation of an agreement to arbitrate based solely upon affidavits. *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 862–63 (Tex. App.—Houston [14th Dist.] 2007, orig proceeding). Yazhari advances three arguments against such an evidentiary hearing.

First, Yazhari argues that arbitration of claims is properly denied when one party *contends* that he did not sign the arbitration agreement or that his signature was forged. However, Yazhari overstates the legal principle. The cases cited by Yazhari stand for the proposition that, where forgery is alleged, the court must determine whether an arbitration agreement exists. *See, e.g.*, *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) ("[B]ecause arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration. We agree with those circuits which have included claims that the signature is forged or the agent lacked authority to bind the principal in this category."). Yazhari has not cited any cases suggesting that an *allegation* of forgery is sufficient to defeat the agreement as a matter of law.

Next, Yazhari argues that the trial court correctly denied the motion to compel arbitration without an evidentiary hearing because he presented evidence of appellants'

8

practice of falsifying employee records and using stored electronic signatures. Yazhari submitted the affidavits of three other employees stating that appellants maintained electronic signatures of managers and engineers on computers, and it was common practice to affix electronic signatures to reports. In one of the affidavits, an administrative assistant stated that another employee had electronically altered timesheets. There is, however, nothing about this controverting evidence that conclusively establishes the disputed issue.

Finally, in a related argument, Yazhari argues that, because appellants used stored electronic signatures, there is a "serious question" regarding the authenticity of the purported copy of the arbitration agreement. Relying upon *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362 (2d Cir. 2003), Yazhari urges that because the original of his signed agreement is missing and he contends the duplicate is a forgery, appellants should not be able to use the duplicate agreement. In *Opals*, Opals sought to enforce an arbitration agreement contained in the "Karnick Agreement" in federal district court; Bodylines claimed that the Karnick Agreement was not valid. *Id.* at 367. On Bodylines' motion for summary judgment on the validity of the arbitration agreement, the parties agreed that one of the signatures "was not a genuine signature," and thus, the court held that Opals could not enforce the Karnick Agreement as a matter of law. *Id.* at 370.

Opals, however, further argued that summary judgment was improper because the trial court should have construed its complaint as alleging that Opals and Bodylines had an agreement to arbitrate that was embodied in some other document, or combination of documents. *Id.* Based upon the absence of the originals of the other documents and the inability of the parties' forensic experts to render a conclusive opinion as to whether the documents were legitimate, the court determined that the documents would have been **inadmissible** under Rule 1003 of the Federal Rules of Evidence.[3] As such, the trial court

---

[3] *See* FED. R. EVID. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). Texas Rule of Evidence 1003 is the same. *See* TEX. R. EVID. 1003.

did not err in holding there was no genuine issue of material fact concerning the validity of an agreement to arbitrate. *Id.*

On this record, however, there is no concession that Yazhari's signature is forged. The affidavit evidence is competing on the question and, thus, *Opals* provides no support for Yazhari's assertion that the agreement is automatically unenforceable. Yazhari's argument presents an evidentiary issue. Yazhari made no evidentiary objection to the document in the trial court, and we take no position on its admissibility in future proceedings. Yazhari cannot avoid the evidentiary hearing required by Texas law by prospectively urging an evidentiary objection on appeal.

To the extent that the trial court denied the motion to compel arbitration because appellants failed to establish consent, it abused its discretion because it could not decide the issue without holding an evidentiary hearing. *See Jack B. Anglin Co.*, 842 S.W.2d at 269.[4] We sustain appellants' Issue No. 1A.

Nevertheless, an independent basis to affirm exists if Yazhari's claims are not within the scope of the arbitration agreement urged; if such arbitration agreement is illusory; or if appellants are not parties to the agreement. Therefore, we turn to appellant's other issues regarding the arbitration agreement.

## C. Whether Yazhari's Claims Are in the Scope of the Arbitration Agreement

In Issue No. 1B, appellants argue that Yazhari's claims fall within the scope of the arbitration agreement. In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint rather than the

---

[4] Appellants urge that they requested the trial court conduct an evidentiary hearing. We disagree. A blanket reference in a pleading that the court "may conduct an evidentiary hearing" is not a proper request for an evidentiary hearing. However, the trial court **must** conduct an evidentiary hearing where there is a genuine issue of material fact concerning the formation of an agreement to arbitrate. *Jack B. Anglin Co.*, 842 S.W.2d at 269. The trial court does not have the authority to resolve disputed facts issues concerning the formation of an agreement to arbitrate based solely upon affidavits. *In re Weeks Marine, Inc.*, 242 S.W.3d at 862–63. We read Texas authority to require the trial court to order such hearing *sua sponte* where the facts are in dispute.

10

causes of action asserted.  *Prudential Sec., Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995) (orig. proceeding) (per curiam).  In this case, however, Yazhari does not argue that his factual allegations are not within the scope of the arbitration agreement.  Instead, his contention is based solely on his position that appellants are not parties to the arbitration agreement.  Thus, we resolve these issues together.

In Issue No. 3, appellants assert that GC, LLC is a converted entity with the statutory right to enforce the arbitration agreement.  In response to the motion to compel arbitration, Yazhari argued that neither Ramesh Gunda nor GC, LLC, which was not in existence in 2008, is a party to the arbitration agreement, and the arbitration agreement does not incorporate or reference members, successors, or assigns.

On January 22, 2010, GC, Inc. filed with the Office of the Secretary of State of Texas a Certificate of Conversion of a Corporation to a Limited Liability Company.  The effective date of the conversion was February 1, 2010.  When a conversion takes effect, "the converting entity continues to exist without interruption in the organizational form of the converted entity rather than in the organizational form of the converting entity."  TEX. BUS. ORGS. CODE ANN. § 10.106(1) (West 2012); *see also Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 721 (Tex. App.—San Antonio 2004, no pet.) (providing that limited partnership was same entity as corporation by providing certification from the Secretary of State that the corporation had converted to a limited partnership).  Moreover, "all liabilities and obligations of the converting entity continue to be liabilities and obligations of the converted entity in the new organizational form without impairment or diminution because of the conversion."  TEX. BUS. ORGS. CODE ANN. § 10.106(3).  GC, Inc. did not cease to exist upon conversion to GC, LLC under Texas law.  *Cf. Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 206 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that limited liability company did not cease to exist after its conversion to limited partnership).  As the converted entity, GC,

LLC may enforce the arbitration agreement to the extent that the parties formed an agreement, and it is not illusory.[5]

The arbitration agreement applies to "[a]ny controversy between Employee and the Company or any of its owners, employees, officers, agents, affiliates or benefits plans." As to Ramesh Gunda, he is one of the owners and the president of both GC, Inc. and GC, LLC. Therefore, Yazhari's claims against Ramesh Gunda are within the scope of the arbitration agreement. We sustain appellants' Issue No. 1B and Issue No. 3.

## D. Whether the Arbitration Agreement Is Illusory

In Issue No. 2, appellants claim that the arbitration agreement is not illusory. In his response to the motion to compel arbitration, Yazhari argued that the arbitration agreement is based upon an illusory promise to arbitrate because, when construed as part of the "Policies and Procedures Manual," appellants could revise or change its terms for any reason. Appellants counter that the arbitration agreement is not part of the manual; rather, it is a stand-alone agreement that cannot be modified.

Arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports the underlying contract. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (orig. proceeding) (per curiam). When an arbitration agreement is part of a larger, underlying contract, the remainder of the contract may constitute sufficient consideration for the arbitration provision. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). Stand-alone arbitration agreements require binding promises from both sides as they are the only consideration rendered to create a contract. *In re Advance PCS Health L.P.*, 172 S.W.3d

---

[5] Yazhari further argues that equitable estoppel, which permits non-signatory defendants to an arbitration agreement to enforce the agreement, should not apply here to "deprive [Yazhari] of his day in court." *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2006) (applying equitable estoppel to allow non-signatory defendants to arbitration agreement to compel arbitration of claims by signatory plaintiffs). Having concluded that GC, LLC is not a successor, but a converted entity, we need not address whether appellants may enforce the arbitration agreement pursuant to equitable estoppel.

603, 607 (Tex. 2005) (orig. proceeding) (per curiam).  A promise is illusory if it does not bind the promisor, as when the promisor retains the option to discontinue performance. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (2010) (orig. proceeding) (per curiam).  When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, therefore, no contract. *Id.*  An arbitration agreement is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether. *Id.*

The "Policies and Procedures Manual" provides, in relevant part:

**Revisions**

All policies and procedures contained in this manual will be reviewed and revised as and when deemed necessary by the Company.  The changes will reflect the needs of the Company's business and changes to federal, state, and local laws and regulations.  All changes will be made available to employees.

**Policy Exceptions**

The President has the authority to grant an exception to any policy or procedure in this manual, including the granting of special prerogatives.

Yazhari urges that the arbitration agreement is illusory because "the Company," in the above-quoted provisions in the manual, reserved the right of unilateral modification. Specifically, "the Company" has the right to "review and revise" the policies and procedures in the manual.  Furthermore, Ramesh Gunda, as President, reserved within the manual the right to "grant an exception to any policy or procedure in this manual."  The parties advance competing arguments about whether the arbitration agreement is "contained in this manual" or is a stand-alone agreement.[6]  Yazhari's argument that the

---

[6] Although we conclude that there is no evidence the arbitration agreement is "contained in this manual," our opinion should not be read to hold that it automatically is an enforceable stand-alone agreement.  The arbitration agreement does not clearly identify the parties to the agreement.  Instead, the arbitration agreement refers to "the Company" without identifying the name of "the Company." The failure of the arbitration agreement to specifically name GC, Inc. as "the Company" is a patent ambiguity. *See In re Ledet*, No. 04-04-00441-CV, 2004 WL 2945699, at *2–3 (Tex. App.—San Antonio Dec. 22,

13

arbitration agreement is illusory turns upon whether that agreement was "contained in [the Policies and Procedures] manual."

We need not interpret the Policies and Procedures Manual further, however, as the evidence itself presents no dispute about whether the arbitration agreement was "in [this] manual." Yazhari's affidavit unequivocally states that, although he received a volume of policies and procedures while employed by GC, Inc., he never received the arbitration agreement. Similarly, affidavits from Yazhari's coworkers, Jennifer Rogers and Chi Ping "Stephen" Ha, state that no such arbitration agreement "was disseminated as part of the policies and procedures of either entity." Gunda, by his affidavit, states that "[a]s part of these new policies and procedures, the company required employees to acknowledge, in writing, their receipt of the handbook, the company's drug testing policy, and the company's arbitration policy." This statement is evidence that the policies required acknowledgement of the arbitration agreement, not that the arbitration agreement was part of the manual. The manual does not refer to the arbitration agreement. And, the arbitration agreement does not refer to the manual. In short, there is no evidence the arbitration agreement was actually part of the manual.

As we determine that there is no evidence the arbitration agreement was "contained in this manual," we conclude that appellants have established that the agreement is not illusory. We sustain Issue No. 2.

---

2004, orig. proceeding) (mem. op.) (holding that arbitration agreement, which did not identify "resident" of nursing center, but was left blank, was subject to patent ambiguity because the agreement did not clearly identify the parties to the agreement). As parol testimony is generally admissible to show the identity and relationship of contracting parties whose names are not clearly indicated upon the face of the writing itself, we leave to the trial court to determine in the first instance whether an evidentiary hearing is warranted here. *See Jordan v. Rule*, 520 S.W.2d 463, 465 (Tex. Civ. App.—Houston [14th Dist.] 1975, no writ).

**E. Whether Other Agreements Are Applicable**

Separate and apart from the February 15, 2008 arbitration agreement central to this dispute, appellants argue alternatively by Issue No. 4 that Yazhari's claims are subject to the arbitration provisions found in GC, Inc.'s shareholder agreement and GC, LLC's member agreement. Appellants concede that Yazhari is a non-signatory to the shareholder agreement and the member agreement. Instead, appellants urge that, because Yazhari is seeking the "benefits of those agreements," and the agreements contain arbitration clauses, Yazhari is required to arbitrate his claims under the theory of direct benefits estoppel.

Generally, an arbitration agreement is only enforced between signatories to the agreement. *Van Zanten v. Energy Transfer Partners, L.P.*, 320 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Under direct benefits estoppel, a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Therefore, a non-signatory plaintiff may be compelled to arbitrate if he seeks to enforce the terms of a contract containing an arbitration provision. *Id.*

Appellants first offered the agreements upon which they rely as attachments to their reply brief in support of their motion to compel arbitration. They are the shareholder agreement between GC, Inc. and one of Yazhari's coworkers, Rajesh Tanwani, dated December 11, 2008, and the member agreement between GC, LLC and Rajesh Tanwani, dated February 1, 2010. Appellants have merely produced shareholder and membership agreements with another employee to whom they provided an ownership interest in the GC entities.

Yazhari is claiming a one-third ownership interest in GC, LLC, which appellants failed to deliver to him. Yazhari is neither trying to enforce Tanwani's agreements with GC, Inc. or GC, LLC nor is he seeking the benefits of Tanwani's agreements. Therefore,

appellants cannot compel Yazhari to arbitrate his claims pursuant to the arbitration clauses found in either the GC, Inc. shareholder agreement or the GC, LLC membership agreement. We overrule Issue No. 4.

## III. CONCLUSION

We hold that the fact issue regarding whether Yazhari consented to the arbitration agreement by signature or continued employment following notice must be resolved by evidentiary hearing. We further hold that the arbitration agreement is not illusory, Yazhari's claims fall within the scope of the arbitration agreement, and appellants may enforce the arbitration agreement to the extent that an agreement exists. We reverse the trial court's order denying appellants' motion to compel arbitration of Yazhari's claims, and remand to the trial court for proceedings consistent with this opinion.


/s/    Sharon McCally
Justice

Panel consists of Justices Boyce, McCally, and Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.

16